Cadwalader v. Pyle.

---

No. 19,093.

Arvilla Cadwalader and Anna J. Vinsonhaler, *Appellants,* v. C. H. Pyle et al., *Appellees.*

SYLLABUS BY THE COURT.

1. Change of Place of Residence—*Mental Capacity to Make.* Evidence that a person suffering from disease which affected his mind took such part in conversations at different times as to indicate that he had a reasonably clear idea of his condition, surroundings and purposes, is sufficient to support a finding that he had capacity to make a change of residence, notwithstanding the testimony of physicians that he was entirely incapable of transacting business and did not know the effect of his acts.

2. Witnesses—*Transactions with Person Since Deceased.* If the present statute providing that in certain cases "no person shall be allowed to testify in his own behalf in respect to any transaction or communication had personally by such party with a deceased person," ever applies to witnesses who are not parties, its disqualification does not extend to one who is in-

22—95 Kan.

terested in the result of the action only by virtue of being the husband or wife of a defendant against whom a personal judgment is sought.

Appeal from Norton district court; WILLIAM S. LANGMADE, judge. Opinion filed May 8, 1915. Affirmed.

*W. E. Mahin,* of Osborne, *F. W. Mahin,* and *I. M. Mahin,* both of Smith Center, for the appellants.

*H. O. Caster,* of Oberlin, and *L. H. Wilder,* of Norton, for the appellees.

The opinion of the court was delivered by

MASON, J.: Lewis Pyle was reared by his parents in Kansas. He removed to Wyoming, where he resided for some years. In November, 1909, he went to Denver, where he received medical treatment. About January 11, 1910, he came to the home of his mother, in this state, where he remained until he died intestate a month later, owning considerable personal property. He was survived by his mother, two brothers and three sisters, his father being dead. Two of the sisters brought action against the mother, the two brothers, and the other sister, alleging the wrongful conversion of all the personal property, and asking a judgment in behalf of each for one-sixth of its value. The title to the property depends upon the question—Of what state was Lewis Pyle a resident at the time of his death? If of Wyoming, one-sixth of it descended to each of the parties named; if of Kansas, the mother became its sole owner. The defendants maintain that he came to Kansas intending to make this state his permanent home, thereby becoming a resident here. The plaintiffs deny this, and assert that before he entered this jurisdiction his mind was so far impaired by disease that he had no capacity to make a change of residence in a legal sense. The court found for the defendants, and the plaintiffs appeal.

Two physicians who had examined Lewis Pyle at Denver testified, by affidavits taken under such circumstances as to render them admissible as depositions, that in their judgment he was while there entirely incapable of transacting business with any degree of intelligence—did not know the effect of his acts—and that this condition would continue until his death. A physician who treated him after his arrival in Kansas testified that there was some mental impairment, but whether enough to prevent the transaction of business he could not say. And several nonexpert witnesses gave opinions sustaining his competency, supported by reports of conversations indicating a fairly clear idea of his condition, surroundings and purposes. The objection is made that their opportunity for observation was not sufficient to qualify them to express opinions as to his mental condition. The objection goes rather to the weight than to the admissibility of the evidence. Both were matters for the determination of the trial court. (*Kempf v. Koppa,* 74 Kan. 153, 85 Pac. 806; 1 Wigmore on Evidence, § 689.) Just how far one's faculties must be impaired to render him incapable of forming an effective intention with regard to his residence may not be easy to determine. Doubtless a less degree of mental strength would be required for that than for the valid performance of many other acts, such as executing a deed or will. As was said in *Holyoke v. Haskins,* 22 Mass. 20:

"If it were admitted that idiots, and persons wholly bereft of understanding, are incapable of changing their domicil, it would not follow that the same incapacity would attach to all degrees of mental imbecility. There are those, and not a few, who may be unable to manage their property and other concerns with good judgment and discretion, and may need guardians to protect them from imposition, and who nevertheless have sufficient understanding to choose their homes." (p. 26.)

The general rule is thus stated:

"The mere fact that a person is of unsound mind does not necessarily preclude him from establishing his domicile, as the question must depend entirely upon the extent to which his reason has been impaired. In general it may be stated that but a comparatively slight degree of understanding is required in order that his action may be recognized." (14 Cyc. 848.)

The expert evidence regarding Lewis Pile's condition was given in very general terms. The specific statements regarding his conduct after coming to Kansas had considerable persuasive force. Whether he was capable of an intelligent design to abandon his old home and acquire a new one is a question of fact upon which there was sufficient conflict of testimony to render the decision of the trial court final.

C. H. Pyle, one of the defendants, testified to communications between himself and Lewis Pyle, with regard to the intention of the latter to make Kansas his permanent home. The testimony is objected to on the ground that its reception violated the statute which now reads:

"No person shall be allowed to testify in his own behalf in respect to any transaction or communication had personally by such party with a deceased person, where either party to the action claims to have acquired title, directly or indirectly from such deceased person." (Laws 1911, ch. 229, § 1, amending Gen. Stat. 1909, § 5914, Civ. Code, § 320.)

The defendants maintain that the witness was not testifying in behalf of himself, but of his mother, who according to their view was entitled to all the personal property owned by Lewis Pyle at the time of his death. But the plaintiffs were contending that the defendants had joined in wrongfully converting the property, and were all liable in damages, so that C. H. Pyle was a witness for himself as well as for his mother. The contention is also made that the plaintiffs had rendered the witness competent to give the testimony referred

to, by calling him to the stand and questioning him concerning his dealings with his brother during his last illness. The plaintiffs did use C. H. Pyle as a witness in making their case, asking him about transactions had with Lewis Pyle, which may have had some slight bearing upon the question of a change of residence. As the plaintiffs developed this much from the witness, there is possibly room for a contention that they could not object to his testifying to further communications on the same subject. (*Plowman v. Nicholson,* 81 Kan. 210, 105 Pac. 692; 40 Cyc. 2339.) This question need not be determined, however, because there was other competent testimony supporting the conclusion that Lewis Pyle intended a change of domicile, and as the hearing was had without a jury the mere reception of incompetent evidence on the subject is not ground of reversal. (*McCready v. Crane,* 74 Kan. 710, 88 Pac. 748.)

A purpose on the part of Lewis Pyle to change his residence could perhaps be inferred from the circumstances testified to by wholly disinterested witnesses. Important evidence on that subject was given by the husband of one of the defendants. He testified that he had several conversations with Lewis Pyle, who talked with him about wanting to buy land in Kansas, saying that he would like to have an alfalfa farm here; that he was tired of the life he had been living. The point is made that this witness also was incompetent, because as the husband of a defendant he had an interest in the controversy, although not himself a party. Prior to 1911 the statute began with the words "No *party* shall be allowed to testify," and was held not to affect a witness who was not actually a party to the litigation, no matter how much he might be interested in, or affected by, the result. (*Mendenhall v. School District,* 76 Kan. 173, 90 Pac. 773.) As shown by the quotation already made the amended statute substitutes "person" for "party," where that word first occurs. This change,

in view of the prior decision cited, suggests a purpose to extend the rule to witnesses who are not parties; but a contrary inference can be drawn from the fact that in defining the subject as to which the witness is disqualified, the statute still retains the phrase "to any transaction or communications had personally by such *party* with a deceased person." Even if the statute should be interpreted as applying to persons who, although not parties, will be affected by the result of the action, we can not regard the disqualification as extending to a witness who is interested only by virtue of being the husband or wife of a defendant against whom a personal judgment is sought. The majority of courts which have passed on the question appear to hold that where one spouse is forbidden to testify to a transaction with a person since deceased, the other is rendered incompetent as well. (30 A. & E. Encycl. of L. 1011, 1012; 40 Cyc. 2282, 2283.) But the view announced is required by the established policy of this court to construe a doubtful statute in favor of the admission rather than the rejection of evidence. (*Armstrong v. Street Railway Co.*, 93 Kan. 493, 503, 144 Pac. 847.)

Complaint is also made of the rejection of an offer to prove that some of the defendants, who gave notes to their mother for the part of the estate they received, had at the time no property, the purpose being to show that the transaction amounted to a division of the property, the notes being given as a mere form. The ruling was not material, because if Lewis Pyle died a resident of Kansas—as the trial court found—the plaintiffs had no interest in the property and were not legally concerned as to what was done with it.

The judgment is affirmed.