BELL SAMPLE SHOE CO. et al. v. INDUSTRIAL COMMISSION OF UTAH et al.

No. 4548. Decided August 15, 1927. (259 P. 193.)

*Henry Moyle* and *J. M. Christensen,* both of Salt Lake City, for plaintiffs.

*Harvey H. Cluff,* Atty. Gen., and *J. Robert Robinson,* Asst. Atty. Gen., for defendants.

THURMAN, C. J.

This is a proceeding to review an award of the Industrial Commission of Utah. The plaintiff Bell Sample Shoe Company is an employer within the terms of the Utah Industrial Act (Comp. Laws 1917, §§ 3061-3165), and defendant Hayes was its employee. The plaintiff Fidelity & Guaranty Company carried the insurance. On January 8, 1926, defendant Hayes, by letter addressed to the commission, represented that he had sustained an injury in said employment on December 23, 1925, and made application for such compensation as he might be entitled to under the Industrial Act. He requested, however, that inasmuch as settlement might be made without formality, the case should not be set for hearing until he gave further notice. Again, on April 22, 1926,

Hayes, who was then in Boise, Idaho, by letter made a further application to the commission for compensation in language identical with that in his former application. At the time this application was made Hayes, who was a World War veteran, was receiving treatment furnished by the United States Veterans' Hospital at Boise. The commission set the case to be heard September 9, 1926, and it was heard at that time. All parties were represented; witnesses were sworn and testified and exhibits were admitted. The commission found that the applicant was injured in the course of his employment. "While waiting on a customer he had occasion to climb up on a stepladder, which tipped over, throwing him across a counter on his back. That the fall resulted in a period of temporary total disability which confined Hayes to his bed." It was further found by the commission that Dr. E. R. Van Cott treated Hayes for his injured back; that subsequent to his injury and prior to January 20, 1926, he suffered a gastric hemorrhage; that he was a World War veteran and entitled to hospital and medical treatment by the United States Veterans' Bureau and received permission from Dr. Van Cott to go to the Veterans' Bureau at Boise, Idaho, and was assured by the doctor that his compensation would be continued; that he was hospitalized in the government hospital at Boise at the expense of the United States Veterans' Bureau; that he could not be treated for stomach trouble at Salt Lake by the Veterans' Bureau; that when he went to Boise he informed his employer of the fact. The commission, however, found that Hayes "did not get written permission from the Industrial Commission of Utah to leave the state, as provided in subdivision 1 of section 3152 of the state Industrial Act; that he was not aware of the fact that said written consent should have been secured from the Industrial Commission before leaving, but later was advised of that fact." The commission made other findings not material here, and finally found that applicant is still suffering from temporary partial disability; that he was earning $25 per week at the time of his

injury; and that he was temporarily totally disabled on account of said injuries during all the time he was in the hospital at Boise.

As conclusions of law the commission found the jurisdictional facts and the facts above set forth, and as justification for applicant's leaving the state without the written consent of the commission the commission found in substance as follows:

(1) That he obtained the consent of his attending physician with the assurance from the physician that his compensation would not be interrupted.

(2) That his being hospitalized at Boise in a government institution at the expense of the Veterans' Bureau would relieve his employer and its insurance carrier from hospital and medical expense during said period.

(3) That his leaving the state was not the result of obstinacy on his part in refusing to submit to reasonable treatment, but in order to be the beneficiary of the maximum recovery within a minimum period of time.

(4) That the insurance company had no notice of his intention to go because his employer had notice.

(5) That the insurance company at no time demanded that he return to Utah, but on the contrary acquiesced in his remaining away by requiring him to report to their local surgeon at Boise for examination.

The commission ordered that applicant's employer, or its insurer, pay him compensation as provided by law from December 25, 1925, to and including August 25, 1926, less the three days' waiting period, credit to be taken for any sum already paid. It was further ordered that for any temporary partial disability after the above period compensation should be paid. The record shows that the employer had voluntarily paid applicant the sum of $49.27 from December 23 to January 19, the date on which the applicant left the state.

Application for rehearing was made by the employer and the insurance carrier and denied. They instituted this proceeding to annul the award.

Plaintiffs assail the award on two grounds: (1) That the award for compensation during the time applicant was absent from the state is contrary to law; (2) that the evidence is insufficient to sustain any award whatever. It is admitted by the applicant that he left the state and went to Boise without the written consent of the commission. In fact he makes no claim that he had any consent from the commission, either verbal or written.

Comp. Laws Utah 1917, § 3152, as amended in Sess. Laws 1921, at page 182, reads as follows:

"Any employee claiming the right to receive compensation under this title may be required by the commission, or its medical examiner, to submit himself for medical examination at any time and from time to time at a place reasonably convenient for such employee, and as may be provided by the rules of the commission. If such employee refuses to submit to any such examination or obstructs the same, his right to have his claim for compensation considered, if his claim be pending before the commission, or to receive any payments for compensation theretofore granted shall be suspended during the period of such refusal or obstruction.

"1. An injured employee who desires to leave the locality in which he or she has been employed during the treatment of his or her injury or desires to leave this state, shall report to his or her attending physician for examination, notifying the commission in writing of such intention to leave, accompanying such notice with a certificate from the attending physician, setting forth the exact nature of the injury, the condition of the employee, together with a statement of the probable length of time disability will continue. After complying with the requirements herein set forth and upon written consent of the commission, the employee may leave the locality in which he or she has been employed, otherwise no compensation will be allowed during such absence from the locality in which he or she has been employed."

It is contended by plaintiffs that the above statute is mandatory and that an applicant who leaves the state with-

out the written consent of the commission is not entitled to compensation during the period of his absence. Such appears to be the plain meaning and intention of the statute, and neither the commission nor the court can graft an exception thereon, unless it appears from the purpose of the statute that it was intended to be directory only. No such purpose appears in the instant case, and the manifest intention of the statute was that it should be obeyed or the penalty therein provided would be enforced. To hold that applicants for compensation can leave the state at will and place themselves beyond the jurisdiction of the commission and beyond their power of supervision as to treatment, care and accountability, is utterly inconsistent with the purpose of the Industrial Act. The employers and insurance carriers who under the act are compelled to foot the bill for the compensation to be awarded are entitled at all times to know the condition of the injured workman and the treatment that is being administered. This very case furnishes a strong illustration for the necessity of the statute in question and for a mandatory interpretation thereof.

The commission made the following finding:

"That the United States Fidelity & Guaranty Company, upon learning of Hayes' hospitalization at Boise, wrote him and instructed him to report to Dr. J. S. Springer, their local surgeon at Boise; that Hayes complied with this request; that the United States Fidelity & Guaranty Company made an attempt to get an opinion from the medical authorities at the hospital concerning phases of the injury supposed to have been received by Hayes; that this information could not be given because of the rules and regulations of the United States Veterans' Bureau."

It therefore conclusively appears that the very parties who under the law are obliged to pay the compensation that may be awarded were powerless to ascertain the actual physical condition of the workman because he was beyond the jurisdiction and supervision of the commission. He was not only beyond the jurisdiction and supervision of the commission, but was also inaccessible to the employer

and the insurance carrier. Information concerning his condition could not be obtained even upon request.

It is unnecessary to comment on the reasons assigned by the commission as an excuse for applicant's disregard of the plain provisions of the statute. They are simply attempts to graft upon the statute exceptions and provisos, which the Legislature itself did not intend or it would have expressed them in the statute itself. *Gribble* v. *State*, 85 Tex. Cr. R. 52, 210 S. W. 215, 3 A. L. R. 1096. Nor is it necessary to comment on the points urged by defendants' counsel. They are either amplifications of the excuses stated by the commission in its conclusions or additional excuses of the same general character.

Plaintiffs refer to numerous authorities in support of their contention that the statute is mandatory and cannot be disregarded without incurring the loss of compensation as therein provided. While we are clearly of the opinion that the statute and its purpose are so plain that it needs no interpretation (*State* v. *Martin*, 193 Ind. 120, 139 N. E. 282, 26 A. L. R. 1386), we nevertheless, for the benefit of such as may be interested in the subject, refer, without comment, to some of the cases cited: *Miles* v. *Wells*, 22 Utah 55, 61 P. 534; *Corbett* v. *Bradley*, 7 Nev. 106; *In re Cramer's Election Case*, 248 Pa. 208, 93 A. 937, Ann. Cas. 1916E, 914; *Skelton* v. *Bliss*, 7 Ind. 77; *Koch* v. *Bridges*, 45 Miss. 247.

The court is of opinion that the award for compensation to the applicant during the time he was absent from the state was illegal, and to that extent, the award should be annulled.

But it is contended that the evidence was insufficient to sustain any award whatever. It can hardly be disputed that the nature of the accident was such that injury might result. While serving a customer, Hayes climbed up a ladder to reach a pair of shoes on the top shelf, probably 15 or 16 feet to the top. The ladder tipped over throwing him across a counter on his back. He testified it hurt him considerably at the time and that he got

one of the clerks to take his place and wait on the customer. He had to lie down awhile before returning to work. He worked until supper time. He took his lunch into the lunch-room to eat it. After eating he tried to rise and fell to the floor. He finally got up by the help of a chair, but fell down three or four times. There was no feeling whatever in his legs. One of the clerks helped him up. He sat down a few minutes and tried to get up again but could not do it. They took him out to his brother's home on Laird avenue. The next day his brother took him to Dr. Van Cott, his family physician. Dr. Van Cott sent him to Dr. Kirby and had X-rays taken. Dr. Van Cott advised him to lie absolutely quiet in bed for a few days. He followed the advice and on January 7 had a hemorrhage of the stomach. They took him to the Veterans' Hospital at Boise. He took treatment there. In a few days he was better and could walk around but the pain never left him. He could hardly stand it. If he sat down for a few minutes it was almost impossible to get up. The pain has continued since that time, although it is better at times. It was impossible for him to stoop over and lift anything. He was unable to do heavy work. The lower part of his legs bothered him from numbness. Such in brief was testimony of the applicant at the hearing before the commission.

Dr. Garland H. Pace testified, and was asked if he thought applicant was a malingerer or a neurotic as the result of the injury. He stated that he was unable to say. He thought applicant was a neurotic—whether as a result of the injury he could not say. He was then asked, "What is the usual cause?" He said, "One cause is injury."

Letters for Dr. E. R. Van Cott and Dr. J. J. Galligan were admitted in evidence. They regarded him as a neurotic. Dr. Van Cott stated there was every possibility of his being a malingerer. Dr. Galligan said: "I do not believe his accident to be responsible for his present symptoms." Notwithstanding the testimony of these physicians the applicant

testified as above stated and Dr. Pace said his condition might be the result of the injury. The commission found his injury resulted from the accident and awarded him compensation accordingly. There was substantial evidence to sustain the finding.

That portion of the award allowing compensation during applicant's absence from the state is annulled. The remaining portion is affirmed.

CHERRY, STRAUP, HANSEN, and GIDEON, JJ., concur.