# UTAH IDAHO CENT. R. CO et al. v. INDUSTRIAL COMMISSION OF UTAH

No. 5507.  Decided September 6, 1934.  (35 P. [2d] 842.)

*De Vine, Howell & Stine,* of Ogden, for plaintiffs.

*Joseph Chez,* Atty. Gen., and *Willard Hanson,* of Salt Lake City, for defendants.

STRAUP, Chief Justice.

Ovid L. Pope, an employee of the Utah Idaho Central Railroad Company or the Utah Rapid Transit Company or both, in the course of his employment, on September 27, 1928, was injured while on a moving freight car coming in contact with a post or private mail box near the railroad track and thrown to the ground injuring his knee. The accident was reported to the Industrial Commission October 6, 1928, by the surgeon of both companies who examined Pope at the hospital on the morning of September 28 and reported that Pope, in the course of his employment, was injured by "hanging on car after cutting train and hit mail box and knocked to the ground," and that the injury consisted of "strain of the internal lateral ligament and dislocation of semilunar cartilage, left knee," and that the probable duration of temporary total disability would be several weeks. On October 10, 1928, the Utah Idaho Central Railroad Company also filed with the Industrial Commission a report of the accident, in which, among other things, it was stated that Pope in its train service was injured while "riding on the side of a coal car when he was scraped off with a private mail box erected 3′ 2″ from the rail, thus making an insufficient clearance," and that he was attended by its physician. The Utah Rapid Transit Company on February 7, 1929, likewise filed a report of the accident with the Commission.

In November, 1928, Pope brought an action in the district court of Weber county, Utah, against the Utah Idaho Central Railroad Company to recover damages for the alleged injury. By his complaint it was alleged that the company was guilty of negligence in maintaining the post or mail

box too near the railroad track, that at the time of the injury he and the company were engaged in interstate commerce, and based his right of recovery under the Federal Employers' Liability Act (45 USCA §§ 51-59). The company answered denying the alleged negligence, that Pope was in its employ, that he was injured while engaged in interstate commerce, averred that he was in the employ of the Utah Rapid Transit Company, that his injury occurred while engaged in intrastate commerce and was entitled to benefits under the Workmen's Compensation Act of Utah. The action came on for trial in May, 1929. After taking some evidence on behalf of the plaintiff and before the case was submitted by him, he dismissed the action without prejudice. A few days thereafter he commenced an action in the Federal District Court of Utah on alleged negligence against both companies to recover damages for the same alleged injuries, in which action he alleged he was in the employ of both companies, that at the time of the injury he and both companies were engaged in interstate commerce and again based his right of recovery under the Federal Employers' Liability Act (45 USCA §§ 51-59). Both companies answered denying the alleged negligence, that the injury occurred while Pope or either of the companies was engaged in interstate commerce, and averred that whatever injury sustained by him was while he and the companies were engaged in intrastate and not in interstate commerce; and that whatever compensation to which he was entitled was recoverable under the Workmen's Compensation Act of Utah (Comp. St. 1917, § 3061 et seq., as amended) and not otherwise. A trial on that action in the Federal District Court in January, 1930, resulted in a directed verdict against Pope and a dismissal of the action on the ground that his injury, if any, was sustained while he and the companies were engaged in intrastate and not in interstate commerce. On appeal by Pope that judgment was affirmed by the Circuit Court of Appeals, December 15, 1931. *Pope* v. *Utah-Idaho Central Railroad Co. et al.*, 54 F. (2d) 575.

In the meantime Pope on September 4, 1929, and within one year from the alleged accident and injury and while the action in the Federal District court was pending and undetermined, filed an application with the Industrial Commission for compensation under the Workmen's Compensation Act. In addition to the usual averments in such case he by his application further averred that:

"A dispute has arisen as to whether the applicant at the time of the accident and injuries complained of was engaged in interstate commerce, and a suit is now pending in the District Court of the United States in and for the District of Utah to determine said issue. * * * This application is filed for the purpose of protecting all rights of the applicant herein under the Workmen's Compensation Act of the State of Utah, and in order that compensation may be paid to applicant in accordance with such act, but subject, however, to the final termination of that certain action now pending in the District Court of the United States in and for the District of Utah, wherein said applicant is plaintiff and the said Utah Idaho Central Railroad Company and Utah Rapid Transit Company are defendants, and wherein this plaintiff has filed a complaint setting forth the nature and character of the work in which he was engaged at the time of the accident and injuries complained of and claiming and asserting that at the time of receiving such injuries he was engaged in interstate commerce and that the rights, therefore, are to be determined under and pursuant to the Federal Employers' Liability Act of Congress and respectfully requests that a hearing upon this application be deferred until such time as said action shall have been terminated and respectfully petitions that if it shall be determined in said cause that applicant was not engaged in interstate commerce that he then be given and awarded compensation under and pursuant to the Workmen's Compensation Act of the State of Utah."

The companies filed an answer to such application admitting that Pope was injured by reason of an accident arising out of or in the course of his employment with the Utah Rapid Transit Company; that there was an action pending in the Federal District Court of Utah wherein it was alleged by Pope that at the time of his injury he was engaged in interstate commerce, which action at the time of the filing of the answer had been determined adversely to Pope but

was still pending on a motion for a new trial. The companies further averred that neither had received notice of the filing of the application with the Industrial Commission, until about seven months thereafter and not until the termination of the action in the Federal District Court; that the Commission exceeded or lost jurisdiction by its failure to give earlier notice of the filing of the application, and because of such failure, the companies were prevented from pleading the filing of such application in defense of the action brought by Pope in the Federal District Court wherein he alleged that at the time of the accident and injury he was engaged in interstate commerce and hence was estopped from claiming that the accident or injury was occasioned while engaged in intrastate commerce.

Thereafter the application was set for hearing before the Industrial Commission of which notice was given, but it being made to appear that the action in the federal court was pending and undetermined in the Circuit Court of Appeals, the hearing on the application was held in abeyance until the termination of the cause in the Circuit Court. After such termination the application on further notice came on for hearing before the Commission, both companies appearing and objecting to the hearing upon grounds heretofore stated, which objection was overruled by the Commission. Evidence was thereupon adduced by both parties on the merits of the application. As a result of such hearing, in which all parties concerned participated, findings among others were made that Pope was an employee of the Utah Rapid Transit Company, that he was injured while engaged in intrastate commerce, that he suffered a temporary total disability for a period of about three and one-third months, and a permanent partial disability for 37½ weeks to the left knee joint, a 25 per cent loss of function. The Commission thereupon made an award in a lump sum of $1,339.59 payable by the Utah Rapid Transit Company and its insurance carrier, the Great American Indemnity Company, also a party to the cause before the Commission.

A petition for a rehearing before the Commission was filed by both companies and by the insurance carrier, which was denied. A writ of review was thereupon granted by this court upon a petition joined in by all of the parties defendants before the Commission. The main points urged by the petition are: (1) That the Commission was without jurisdiction to entertain the application, or had lost jurisdiction to hear the applicaton for compensation on the ground that Pope requested the hearing on his application to be held in abeyance until the final disposition of the action in the federal court, failure of the Commission to give the companies reasonable or timely notice of the filing of the application for compensation and that neither company had notice of such filing until about seven months thereafter; (2) that the action brought by Pope in the Federal District Court constituted an election or an estoppel to claim compensation under the Workmen's Compensation Act; and (3) that the award made is contrary to and against the evidence and the findings of the Commission.

The chief point urged is involved in the first and second stated grounds. It is urged that the bringing of the action by Pope in the Federal District Court claiming damages under the Federal Employers' Liability Act for the same injury and alleging that at the time of the injury he was engaged in interstate commerce constituted an election or estopped him from thereafter claiming compensation under the Workmen's Compensation Act. We thinks the point not well taken. No cases or authorities are cited by the companies in support of such contention. On the contrary, cases are cited by Pope and the Commission which in principle make against such contention and support the view that the doctrine of election has here no application. *Wm. W. Bierce, Ltd.*, v. *Hutchins*, 205 U. S. 340, 27 S. Ct. 524, 525, 51 L. Ed. 828; *O'Donnell* v. *McCool*, 89 Wash. 537, 154 P. 1091; *McCoy* v. *McCoy*, 32 Ind. App. 38, 69 N. E. 193, 196, 102 Am. St. Rep. 223; *Howard* v. *J. P. Paulson Co.*, 41 Utah 490, 127 P. 284.

In the McCoy Case it is said:

"A party who imagines he has two or more remedies, or who misconceives his rights, is not to be deprived of all remedy because he first tries a wrong one; which is not inconsistent with his true and effectual remedy, which he should have pursued in the first instance. (Citing cases.) Election of remedies is the act of choosing between the different modes of procedure and relief allowed by law on the same state of facts, which modes may be termed coexisting remedies. (Citing text.) The result of appellee's first action left him where he was in the first instance, and his present action to enforce his only remedy is not inconsistent therewith."

In *Wm. W. Bierce, Ltd.,* v. *Hutchins,* Mr. Justice Holmes speaking for the court says:

"Election is simply what its name imports; a choice, shown by an overt act, between two inconsistent rights, either of which may be asserted at the will of the chooser alone."

Pope here did not have two remedies consistent or inconsistent or coexisting on the same state of facts, or a choice between different modes of procedure and relief allowed by law on the same state of facts. If his injury occurred while engaged in interstate commerce, he had but one legal remedy and that under the Federal Employers' Liability Act (45 USCA §§ 51-59), which in such case was inclusive and exclusive. *New York Cent. R. Co.* v. *Winfield,* 244 U. S. 147, 37 S. Ct. 546, 61 L. Ed. 1045, L. R. A. 1918C, 439, Ann. Cas. 1917D, 1139; *Wabash R. Co.* v. *Hayes,* 234 U. S. 86, 34 S. Ct. 729, 58 L. Ed. 1226. On the other hand, if his injury was occasioned while engaged in intrastate commerce as alleged by the companies, and as on the undisputed facts found and held by the Federal District Court and affirmed by the Circuit Court of Appeals, and as found by the Industrial Commission, then his only legal remedy was under the Workmen's Compansation Act of Utah. *Murray* v. *Wasatch Grading Co.,* 73 Utah 430, 274 P. 940. In either case he had no choice of any other existing remedy. That he in the first instance and on the facts misconceived his remedy, and pursued one which the law

did not afford him, did not thereafter bar or estop him on the same facts from pursuing the only legal remedy that in the first instance was open to him. *McCoy* v. *McCoy*, supra.

Another point made is want of jurisdiction of the Commission to entertain or hear the cause on the application filed before it. That the application was filed within the statutory period—one year—is admitted. What is claimed is that no jurisdiction was conferred upon the Commission because timely notice was not given the companies of the filing of the application, that they had neither knowledge nor notice of such filing until about seven months after the application was filed. The statute does not fix any time, days, weeks, or months, within which the Commission is required to give the employer notice of the filing of an applicaton for compensaton. No such provision of the statute is pointed to or claimed. Both companies had notice of the accident and injury, and both reported them to the Commission, giving a somewhat detailed account thereof. After an application is filed, certainly no action thereon may be taken against the employer until after notice and an opportunity given him to contest the application. No such action was taken without notice and without giving the companies full opportunity to contest the application. It is urged by the companies that if they had been given notice of the filing of the application before the Commission within a reasonable time after the application was filed, they could have pleaded such fact in the action in the Federal District Court in defense of Pope's claim that the injury occurred while he was engaged in interstate commerce, and because such notice was not timely given them, they, to their prejudice, were deprived of availing themselves of such defense. But they were not hurt by such failure, since upon the undisputed facts the case in the federal court terminated on the very ground alleged and claimed by the companies, that Pope at the time of his injury was not engaged in interstate commerce, and prevailed in such contention without aid or assistance of any averment or proof of the filing of the appli-

cation before the Industrial Commission. In other words, the federal court on the undisputed facts having determined that Pope at the time of his injury was engaged in intrastate commerce, averments and proof that he had filed an application before the Industrial Commission for compensation under the Workmen's Compensation Act in no sense could have influenced the federal court in arriving at a different result or in a result more favorable to the companies.

It also is contended that the failure of the Commission to give timely notice of the filing of the application tended to mislead the companies and to give the impression that no claim for compensation under the Workmen's Compensation Act would be made and had the effect to disarm the companies from more definitely ascertaining ■ the character and extent of the claimed injury. No claim is made that by such failure the companies were in fact misled or that their course of conduct would have been different had more timely notice been given of the filing of the application. We think the contention not well founded inasmuch as the physician and surgeon of both companies, who examined the applicant at the hospital the next morning after the accident and promptly reported the accident and injury to the Industrial Commission, thereafter treated the applicant at the hospital for a week or more, put his leg in a cast, continued to treat him, later treated him at the physician's office, removed the cast, thereafter examined the knee and leg, in all a treatment for a period of about three months when the physician finally discharged and dismissed the applicant as cured and able to resume his employment. All that at the hearing was testified to by such physician called by the companies. The applicant on the trial in the federal court gave evidence as to the character and extent of his injury as claimed by him. In addition to that, the companies at their request, at the hearing before the Commission were permitted by their physician and another physician selected by them to examine the applicant, and both gave testimony as to the result of their examina-

tion. The companies thus had ample opportunity to acquaint themselves with the character and extent of the injury.

Now as to the sufficiency of the evidence to justify the award: That the applicant in the course of his employment sustained an injury to the left knee, and for three months or more was totally disabled from following his employment or from doing similar work, is sustained by substantially all the evidence. There is no substantial conflict in the evidence that at the hearing the applicant had an "eversion" of the left foot which disabled him from performing duties of his former employment or from doing work of a similar character. When the applicant was discharged and released by the physician of the companies as cured and able to resume his employment, the applicant, contending that he was not cured and still disabled, sought the advice and treatment of another physician and surgeon of his own selection who thereafter regularly treated him for four or five months. Such physician testified that when the applicant came to him in December, 1928, his knee was "markedly swollen," that he "was knee-kocked on the left knee," his foot diverted from its normal line, that the leg could not be fully extended, that pressure on the knee by extending the leg gave the applicant acute and severe pain, that there was a partial motor and sensory paralysis of the knee joint, that, while there was no bone injury, there was an internal tearing of the ligaments, that in January, 1930, when he ceased active treatment there was some improvement of the applicant's condition but not sufficient to enable him to do manual labor, that he examined the applicant at the time of the hearing and found that he still had a partial sensory and motor paralysis, an everted and pronated foot and a loss of elasticity, and that his loss of function of the left leg and foot was about 40 per cent., which rendered him unable to do manual labor requiring the use of the leg, and that his condition and disability was due to the injury sustained by him. The physician further

testified that some improvement might be accomplished by the use of braces on the leg and foot.

The applicant testified as to the circumstances and manner in which he received the injury to the knee, that neither prior nor subsequent thereto he had not received or sustained any injury whatever to the knee or leg or foot, and that when he was discharged and released by the physician of the companies he was not cured, and, because of his injury he then and at all times thereafter was unable to do manual labor and in such particular testified to conditions which so disabled him.

The physician of the companies and another physician called by them testified that as the result of their examination at the hearing, the applicant was then suffering from an eversion of the foot which rendered him unable to do the kind of work performed by him prior to the injury, but testified that such condition was not due to the injury but to the manner in which the applicant used his leg and foot after he was discharged and released by the physician of the companies, at which time, as testified to by them, the applicant had no eversion of the foot and was able to follow his employment. There thus was a conflict in the evidence as to whether the disability of the applicant at the time of the hearing was due to the injury admittedly sustained by him, or to the manner of use the applicant had made of the knee after he was pronounced cured by the physician of the companies and discharged and released. Without passing on the weight of the evidence, we think there is sufficient competent evidence to justify the findings of the Commission as to the disability due to the injury and the amount of the award allowed.

Lastly, a further point is made by the companies in briefs and arguments, that the Commission in making the award did not take into consideration the time that the applicant was absent from the state between the time of the injury and the hearing and the Commission making no deduction for such absent period. There is a pro-

vision of our Workmen's Compensation Act (R. S. Utah 1933, § 42-1-86), in force at the time of and since the injury, that:

"An injured employee who desires to leave the locality in which he has been employed during the treatment of his injury, or to leave this state, shall report to his attending physician for examination, notifying the commission in writing of such intention to leave, accompanying such notice with a certificate from the attending physician setting forth the exact nature of the injury, the condition of the employee, together with a statement of the probable length of time disability will continue. Thereafter, and with the written consent of the commission, the employee may leave the locality in which he was employed; otherwise no compensation shall be allowed during such absence."

Because of such provision it is held in the case of *Bell Sample Shoe Co.* v. *Industrial Commission,* 70 Utah 167, 259 P. 193, 55 A. L. R. 730, that a claimant who leaves the state without permission of the Commission is not entitled to compensation during his absence. At the hearing and on the examination of the applicant, it was made to appear that in July, 1931, while the case was pending in the Circuit Court of Appeals, he went to Los Angeles, Cal., and there did some work in a sales department selling Neon signs, selling life insurance, and helping his brother-in-law in the ice business. How long he was absent from Utah before he returned is not pointed out by either party. Both have left it to us to search the record to ascertain such period. Just how long he was absent is not disclosed by the record. While the Commission found that he was absent, no finding is made as to the length of time of such absence. The Commission, however, further found that he was not absent during any time he was receiving treatment. The last treatment rendered by the physician of the companies was December 13, 1928, when the applicant was pronounced cured and discharged. The last treatment of the applicant by the physician selected by him was in 1930. The applicant left for California in July, 1931. The Commission further found that the companies made no claim for any reduction because

of the absence of the applicant. No such claim was made by them by their application for a rehearing before the Commission and no such claim is made by them by their petition for review and no review of the record asked upon such ground. Because no such claim was made before the Commission nor a review of the record asked upon such ground, the matter may well be disposed of, as we do, for such reason.

The award thus is affirmed, with costs to the applicant.

ELIAS HANSEN, FOLLAND, EPHRAIM HANSON, and MOFFAT, JJ., concur.