OGDEN UNION RY. & DEPOT CO. v. INDUSTRIAL COMMISSION et al.

No. 5450.   Decided December 7, 1934.   (38 P. [2d] 766.)

*Geo. H. Smith, R. B. Porter,* and *W. Hal Farr,* all of Salt Lake City, for plaintiff.

*Joseph Chez,* Atty. Gen., and *Willard Hanson,* of Salt Lake City, for defendants.

MOFFAT, Justice.

This cause comes here for review from the decision of the Industrial Commission upon three claimed errors on the part of the commission: First, that there is no sufficient competent evidence that the accident suffered by Peter F. Prunty brought about the incapacity from which he suffers, or that he was affected by the injury longer than to the 6th day of October, 1931; second, that Peter F. Prunty is an inmate of a government hospital at Sheridan, Wyoming, is receiving $40 a month from the government, and hospital care and treatment, and therefore is not entitled to any compensation for his alleged injuries as long as so cared for; third, that Peter F. Prunty left the state of Utah in August, 1932, without complying with the statute relating to securing the consent of the Industrial Commission, and has continued to be absent from the state since his departure in August, 1932.

The Industrial Commission heard the case, made findings, and awarded compensation, and this is an action to review the findings and decision of the commission. There is no dispute as to the time or fact of the defendant Peter F. Prunty having received an injury in the course of his employment. On May 24, 1931, he was in the employe of the plaintiff, Ogden Union Railway & Depot Company, as a switchman at Ogden, Utah. On that day he fell a distance of about 18 feet from the top of a freight car while engaged in setting the brake, and met with an injury. He was promptly taken to the Dee Hospital at Ogden for treatment. Prunty remained in the Dee Hospital under the care of physicians and surgeons of the plaintiff company for a period of 28 days. When he was discharged from the hospital, he was still suffering from the injuries, and required the services of physicians and surgeons. Dr. J. R. Morrell, a company physician, continued to treat him until the 6th day of October, 1931, when he discharged him from his care as "surgically cured.'" During the same month Mr. Prunty consulted Dr. Holbrook at Salt Lake City in relation to the injuries suffered to his left arm at the elbow, the back of his neck and head, and certain muscles and nerves of his neck and head. By February, 1932, Mr. Prunty had devloped some mental disorders and hallucinations which become progressively more pronounced, until the month of May, 1932, when he had become violently insane and was committed to the mental hospital at Provo, Utah, where he remained until the 4th day of August, 1932, when he was removed by order of the United States authorities to the United States Veterans' Hospital at Sheridan, Wyo.

The powers of review in this proceeding do not extend beyond an examination of the record certified to this court to determine whether or not the commission acted without or in excess of its powers, and whether or not the findings of fact made, if findings are made, support the award. It is not necessary to cite authorities in support of this. We content ourselves with reference to the

statute and two of the most recent cases decided by this court with reference to the matter. R. S. Utah 1933, 42-1-78; *Easthope* v. *Industrial Commission*, 80 Utah 312, 15 P. (2d) 301; *Chase* v. *Industrial Commission*, 81 Utah 141, 17 P. (2d) 205.

We have fully and carefully examined the record, the findings of fact, the conclusions, and the terms of the award. That there is sufficient competent evidence in the record to support the award is not open to question. Neither may it be said the findings fail to find support in the record of the evidence submitted. To make a restatement of the evidence even if it be conceded that there is a conflict is merely to proceed to weigh the evidence. This we may not do except to determine whether or not there is sufficient competent evidence to support the findings or the award.

That the defendant Peter F. Prunty is now insane is conceded. That he was injured in the course of his employment and by accident is likewise conceded. That he was committed to the Utah State Hospital at Provo and transferred to the Veterans' Hospital at Sheridan, Wyo., is admitted. That certain muscles and nerves of the back of the neck and head were injured is not open to question. That the arm because of a fracture at or near the elbow (the medial epicondyle of the left humerus) has become stiff or approximately so to the extent there is little, if any, use of that joint, is recognized.

Substantially the only question is whether or not the mental condition of the defendant is the result of the injury received in falling from the freight car. The Industrial Commission found that at the time of receiving the injuries of which the defendant complained, and as a direct result of falling from the freight car, Peter F. Prunty received a severe shock to his nervous system; that the injury to his head and neck caused severe injuries to certain of the nerves originating in the brain and to the

brain itself; "that as a direct and proximate result of falling from said car, the said Peter F. Prunty in and about the month of February, 1932, developed hallucinations and believed that persons were following him and persecuting him, and mental disorders developed"; that he became progressively worse until his commitment for mental treatment was imperative. This is supported by the evidence.

Dr. Howard T. Anderson treated Mr. Prunty for some time after he was discharged from the Dee Hospital and before he was committed to the Utah State Hospital at Provo, as did also Dr. Horace C. Holbrook. Dr. Anderson, after relating the course of treatment and the history of the case, testified that it was his opinion that the "injury was an indirect cause of the man's insanity." And further:

"Q. In other words if it hadn't been for his injury, he having been perfectly well before that time, no nervous troubles, and a strong physical man, he would not have developed the insanity had he not had this or some other injury? A. Yes.

"Q. Then you would say the insanity is attributable to the injury? A. That is my opinion."

Dr. Holbrook testified:

"Q. In this case could you relate his nervous breakdown to anything else than the injuries as far as you could see? A. Well, no, not so far as I could see."

Dr. J. J. Galligan also testified to the effect that the upset nervous condition revealed by his examination of Mr. Prunty and the history of the case and that the neurosis were attributable to the traumatic injury received the preceding May.

Plaintiff's position that there is no sufficient competent evidence that the accident suffered by Prunty brought about the incapacity is without merit, and must therefore be denied.

Plaintiff submits the issue that, because Prunty is an inmate of a government hospital at Sheridan, Wyo., is receiving $40 a month from the government and hospital treat-

ment and care, he is not entitled to any compensation as long as so cared for. There is no merit in this contention. The statute provides that every employee coming within the terms of the statute who is injured by accident arising out of or in the course of his employment wheresoever the injury occurred, unless the injury was purposely self-inflicted, shall be entitled to receive and be paid such compensation for loss sustained as shall be awarded under the proceedings prescribed and provided by the law applicable to the case. R. S. Utah 1933, 42-1-43. As well argue that, if one has separate income from savings or investments or which friends provide, or if annuities or pensions are paid to an injured or disabled employee, no compensation should be allowed until such sources of support, maintenance, or relief are exhausted. Such is not the purpose of the statute. The purpose of the statute is to reimburse the injured employee for loss of earning power, and to provide for certain care and expenses within the measure and amounts provided by the statute.

The third ground urged in support of the writ of review herein is that Peter F. Prunty left the state of Utah in August, 1932, without securing the consent of the Industrial Commission, and has been absent from the state since that time. The issue calls for a construction, not of the original section 3152, Comp. Laws Utah 1917, but of the amended section in Laws of Utah 1921, c. 67, p. 182, now R. S. Utah 1933, 42-1-86, revised somewhat in form, but, in so far as pertinent to the issue here presented, not changed in meaning. We quote the section as revised:

"An injured employee who desires to leave the locality in which he has been employed during the treatment of his injury, or to leave this state, shall report to his attending physician for examination, notifying the commission in writing of such intention to leave, accompanying such notice with a certificate from the attending physician setting forth the exact nature of the injury, the condition of the employee, together with a statement of the probable length of time disability will continue. Thereafter, and with the written consent of the commission, the employee may leave the locality in which he

was employed; otherwise no compensation shall be allowed during such absence."

The history of the section is interesting. In *Varoukas* v. *Industrial Commission et al.*, 56 Utah 574, 191 P. 1091, it was passed upon as a rule of the commission in 1920, and it was made a statute in 1921. The section has been held to be mandatory. *Bell Sample Shoe Co. et al.* v. *Industrial Commission et al.*, 70 Utah 167, 259 P. 193, 55 A. L. R. 730; *Utah Idaho Cent. R. Co.* v. *Industrial Commission* (Utah) 35 P. (2d) 842.

We are of the opinion the statute, 42-1-86, supra, has no application to the case at bar. When a person becomes insane, the will and the judgment are assumed to have passed away with the coming madness. Where one is deprived of the power and the will to act normally or form judgments because of insanity, he ceases to exercise the active functions of citizenship. There is a change of status. One may not make choice of place of settlement or domicile when by reason of insanity he is incapable of exercising a judgment or direct self-control, although a comparatively slight degree of understanding is required in the selection of a domicile. Smoot, Law of Insanity, § 240 et seq.; *Cadwalader* v. *Pyle*, 95 Kan. 337, 148 P. 655.

It should be further noted that Peter F. Prunty was removed from the state of Utah in August, 1932. The hearings before the commission were held September 13 and October 6, 1932, and the decision rendered April 28, 1933. There is no question raised about the condition or necessity of treatment of the injured employee. He was not in condition to make an application to the Industrial Commission, or even to express a desire, secure a certificate, or make a report to the commission. The commission recognized this. To come within the terms of the statute, there must be a desire and a voluntary leaving. What Mr. Prunty thinks about his removal or where he is we may never know. He may think he is still in Utah or the Promised Land. At the time Prunty

left the state, he would not and could not have known whether an award had been or would be made. An interesting discussion of comparative questions, but none of them touching the particular point here involved, is found in a note on mental incompetency as obviating the effect of failure to comply with provisions of the Workmen's Compensation Act as relating to giving notice or other procedural matters, in 91 A. L. R. 1400.

Finding no error, the award made by the Industrial Commission is affirmed. Such is the order.

STRAUP, C. J., and ELIAS HANSEN, FOLLAND, and EPHRAIM HANSON, JJ., concur.