## KAVALINAKIS v. INDUSTRIAL COMMISSION OF UTAH et al.

No. 4337.   Decided May 11, 1926.   (246 P. 698).

1.   MASTER AND SERVANT—FINDINGS OF FACT BY INDUSTRIAL COMMISSION ARE CONCLUSIVE ON SUPREME COURT (WORKMEN'S COMPENSATION ACT [COMP. LAWS 1917, §§ 3144, 3149, AND SECTION 3148, SUBDS. C, D, AS AMENDED BY LAWS 1921, C. 67]). Findings of fact by Industrial Commission are conclusive in view of Workmen's Compensation Act, §§ 3144, 3149, and section 3148, subds. c, d, as amended by Laws 1921, c. 67, on Supreme Court, and cannot be disturbed except upon clear and convincing evidence that commission acted arbitrarily or capriciously.

Corpus Juris-Cyc. References:

[1]   Workmen's Compensation Acts C. J. p. 123 n. 44 New.

[2]   Workmen's Compensation Acts C. J. p. 117 n. 52 New.

[3]   Workmen's Compensation Acts C. J. p. 122 n. 40.

2. MASTER AND SERVANT. Industrial Commission may not without sufficient cause, arbitrarily refuse to follow uncontradicted evidence.

3. MASTER AND SERVANT—FINDING OF INDUSTRIAL COMMISSION THAT NONRESIDENT ALIEN COMPENSATION CLAIMANT WAS NOT DEPENDENT HELD CONCLUSIVE. Finding of Industrial Commission that nonresident alien claimant for compensation for death of son was not dependent *held* conclusive on Supreme Court, in absence of showing that commission acted arbitrarily or capriciously.

GIDEON, C. J., dissenting in part.

Application by Konstantinos Kavalinakis for writ to review an order of the Industrial Commission of Utah denying compensation for the death of Gust Calivas while employed by the Utah Fuel Company.

ORDER AFFIRMED.

*James H. Wolfe,* of Salt Lake City, for plaintiff.

*Harvey H. Cluff,* Atty. Gen., and *J. Robert Robinson,* Asst. Atty. Gen., for defendant Industrial Commission.

*Ferdinand Erickson,* of Salt Lake City, for defendant Fuel Co.

FRICK, J.

The plaintiff, hereinafter called applicant, a nonresident alien residing in Greece, through an attorney in fact, made application to the Industrial Commission hereinafter called commission, for compensation as a dependent of his son, familiarly known in this country as Gust Valivas, who was killed March 8, 1924, in a mine explosion at Castle Gate, Utah, while employed in the coal mine of the Utah Fuel Company, one of the defendants, hereinafter called company.

There is no question respecting any jurisdictional facts. After a number of hearings before the commission, it ren-

dered a decision denying the application for compensation. Within proper time, the applicant applied to this court for writ of review, which was granted, and pursuant thereto the record of the proceedings had before the commission has been certified to this court.

It is strenuously insisted by counsel for the applicant that in view of the evidence in the record the commission disregarded the law, and hence acted in excess of its powers in denying compensation. In other words, the contention is that the applicant was entitled to compensation as a matter of law, and that it was the duty of the commission to make an award in his favor. The commission, after several hearings, made findings, which are stated in the form of a conclusion, that Gust Calivas "did not leave, at the time of his fatal injury, any one dependent upon him either wholly or partially for maintenance or support, and that therefore the application of the father should be denied." Pursuant to such finding or so-called conclusion, the company was required to pay the sum of $998.40 into the special fund provided for in the Workmen's Compensation Act (Comp. Laws 1197, §§ 3061-3165) for permanently injured employees who may require compensation after the regular period of time has elapsed for which compensation may be made at the time of the initial application.

The question that is now presented for decision is: To what extent may this court control the findings or decision of the commission in cases where it finds and decides that the applicant was not a dependent upon the deceased employee at the time of the latter's injury, where, as here, it is contended that the evidence of dependency is without conflict? In view of the provisions and the object and purpose of our Workmen's Compensation Act, and the express limitations that are placed upon the powers of this court by that act, the foregoing question is not one that can be answered offhand, nor is it entirely free from difficulty.

Our Workmen's Compensation Act, after providing for writs of review, etc., provides:

"The findings and conclusions of the commission on questions of fact shall be conclusive and final and shall not be subject to review; such questions of fact shall include ultimate facts and the findings and conclusions of the commission. The commission and each party to the action or proceeding before the commission shall have the right to appear in the review proceeding. Upon the hearing the court shall enter judgment either affirming or setting aside the award.

"* * * No court of this state (except the Supreme Court) shall have jurisdiction to review, reverse, or annul any award of the commission, or to suspend or delay the operation or execution thereof; provided that a writ of mandamus shall lie from the Supreme Court in all proper cases." Comp. Laws Utah 1917, § 3148, subds. (c) and (d), as amended by chapter 67, Laws Utah 1921."

### Comp. Laws Utah 1917, § 3149, also provides:

"The commission shall not be bound by the usual common law or statutory rules of evidence or by any technical or formal rules of procedure, other than as herein provided; but may make the investigation in such manner as in its judgment is best calculated to ascertain the substantial rights of the parties and to carry out justly the spirit of this title."

### In addition to the foregoing, section 3144 reads as follows:

"The powers and jurisdiction of the commission over each case shall be continuing, and it may from time to time make such modification or change with respect to former findings or orders with respect thereto as in its opinion may be justified."

The foregoing provisions are not only proper to be considered, but they perform very important and essential functions in carrying out the full intent and purpose of the Workmen's Compensation Act. It is likewise of the utmost importance to keep in mind that, if the provision that "the commission shall not be bound by the usual common-law or statutory rules of evidence or by any technical or formal rules of procedure" is to be given any effect, then it must logically follow that the findings and conclusions of the commission on questions of fact must be conclusive and not reviewable by this court. To confer upon the commission the latitude to make findings and arrive at conclusions of fact without regard to the rules of law or pro-

cedure would be utterly useless and illogical if this court were permitted to review such findings and conclusions by applying to them the usual tests of law and procedure in determining their correctness or soundness. To do that would authorize the commission to arrive at a conclusion independently of the usual rules of law and procedure, while this court would approve them if they conformed to the ordinary rules of law and procedure but would disapprove them if they failed to do so. In view, therefore, that this, like all other courts, is bound by the usual rules of law and procedure in determining whether a fact is established or not, while the commission is not thus bound, the Legislature had no alternative except to make the findings and conclusions of the commission upon questions of fact conclusive upon this court. Nor is there any doubt that the Legislature had ample authority to so provide. That such is the law is too well settled to require the citation of authority. It is, however, suggested that to grant to the commission such a power would permit that body to act arbitrarily and in the very teeth of the facts established by the evidence. As a matter of course, that does not necessarily follow, but the same argument could be leveled against any tribunal from whose findings and judgment there is no right of review or appeal. Finality must of necessity be lodged somewhere, and in the absence of constitutional provisions, the power to determine where it shall be lodged, at least respecting rights created by the Legislature, such as we are now dealing with, is necessarily vested in that body and not in the courts. It might just as well be urged that finality ought not to be vested in this or in any court, because to do so might result in arbitrary or capricious action without regard to the evidence or the law. No one would at this late day pay the slightest attention to such a contention. Nor is there any great danger that any tribunal will unlawfully and arbitrarily exercise the powers vested in it. Should it do so, public criticism and condemnation would soon overtake it and thrust it from power. During the nine years that

the Workmen's Compensation Act has been in force and has been administered by the commission, there have come before this court a large number (more than 100) of applications for review, all of which have been granted and reviewed by this court. All of these cases have been officially published and are thus accessible to all persons. A mere cursory perusal of those cases will demonstrate that the commission in administering the law has uniformly acted carefully and conscientiously, and has always construed and applied the law most liberally in favor of the injured employee and his unfortunate dependents. Indeed, in nearly all of the cases the complaint has been, not that the commission has decided against the employee or his dependents, but that it had done so against the employer or the insurance carrier. True, this court in a few cases has been compelled to disagree with the commission upon questions of law, as well as upon jurisdictional grounds. This is, however, the first case in which complaint is made that the commission has arbitrarily disregarded the evidence and has found the facts against a meritorious claim. We could subserve no good purpose in attempting to set forth the evidence in detail. It must suffice to state that nearly all of the evidence is found in the deposition of the claimant, which was taken in Greece, pursuant to a commission issued by the commission, on interrogatories and cross-interrogatories. It should be stated, however, that the record is more or less fragmentary and the evidence is not in all respects very satisfactory or convincing. There is also some documentary evidence in the form of letters and similar documents, including the written application for employment by the deceased, which he made at the time he was employed, which was about one month before the accident resulting in his death. The application for employment contained this question: "Is your father living?" The answer is, "No." The application also contained the further question: "Is your mother living?" The answer again is, "No." The other questions as to whether he contributed to their support, and

to what extent, were left unanswered. In giving the name of the person to whom he desired notice to be sent in case of his death, he gave the name of "Mike Calivas, 560 West Second South street, Salt Lake." The commission also pointed out that the document wherein the applicant appointed the attorney in fact to act for him appeared to be issued to a nephew of the applicant, while a son acted under it. The commission also points out that while the applicant, in his deposition, testified that the mother of the deceased died in 1915, the brother, who testified orally before the commission, testified that she died August 7, 1922. Again, the commission points out that nearly all of the money that was remitted by the deceased to Greece was sent to a brother, and not to the applicant, and further that in transmitting money to the brother the deceased asked the latter to give $10 to the father, and that certain property owned by the father "be put in his [deceased's] name," so that he would have no trouble "upon the death of his father." The brother also testified orally before the commission that he had somewhat regularly contributed to the support of his father, the applicant, and that at the time of the hearing he continued to do so; that he thought that he had contributed "50 or 60 dollars during the year," and that it was his "best judgment" that the deceased had sent about the same amount yearly.

The writer unhesitatingly states that if he were to consider the testimony of the applicant alone, as it appears in his deposition, there would be sufficient evidence to support a finding that the applicant was partially dependent on the deceased, and that an award in his favor for a limited amount would be sustained by the evidence. In other words, a small weekly allowance would find support in the evidence, and if the writer were authorized to make a finding he would be inclined to so find. That, however, presents the whole crux of this case. Is the commission bound to make a finding in favor of an applicant merely because no one can contradict his statements? Counsel insists that in this

case nothing is made apparent in the testimony of the applicant why it should not be believed and taken as true. Indeed, he contends that in view that there is no conflict in and no contradiction of the applicant's testimony, it must be taken as true. No doubt in ordinary cases a trier of fact may not arbitrarily or capriciously disregard testimony or evidence which is not disputed, and where there is no sufficient reason to disregard it. Circumstances alter cases however. As I have endeavored to point out, the commission is not bound by the ordinary rules in such matters. It would be useless to permit the commission to make investigations contrary to the rules of law and procedure, if it could not follow or heed the well-founded facts that may have been discovered in making the investigation. If the commission may not do so, the very purpose and the whole effect of the section allowing independent investigation is destroyed. The commission is not only vested with a large discretion in making findings and conclusions of fact, but it is further permitted to exercise much latitude in reconciling the evidence and in determining the probative force or effect that shall be given to it. This is so whether the testimony is taken orally or is presented in the form of depositions.

By what has been said we do not wish to be understood as holding that there is no limit to the commission's power or authority in disregarding or in refusing to give effect to uncontradicted evidence. The commission may not, without any reason or cause, arbitrarily or capriciously refuse to believe and to act upon credible evidence which is unquestioned and undisputed. What we hold is that in case the commission is charged with having arbitrarily and capriciously refused to consider credible evidence, and we are asked to overturn the findings and conclusions of the commission which appear to be in conflict with or contrary to the evidence, it must be clearly made to appear to us that the commission acted arbitrarily or capriciously and wholly without cause in rejecting or in refusing to give effect to the evidence. We cannot set aside a finding

or conclusion of fact merely because we are of the opinion that upon the face of the record the commission refused to give effect to certain uncontradicted evidence. Before we can set aside findings or conclusions of fact, the fact that the commission acted arbitrarily or capriciously must be so clear and convincing that but one conclusion is permissible, and that we would be required to issue a writ of mandate directing a specific finding of dependency, as we are empowered to do by subdivision (d) of section 3148, supra. Any other conclusion would make this court merely a reviewing court with power to weigh the probative effect of the evidence. The foregoing thought is clearly stated by the Supreme Court of Michigan in *Martilla* v. *Quincy Min. Co.*, 221 Mich. 525, 191 N. W. 193, 30 A. L. R. 1249, in the following words:

"The award of the Compensation Board cannot be set aside because alleged to be contrary to documentary evidence in the case unless such evidence commands a different result."

That is, unless it is so clear that the reviewing court would be required to direct a specific finding to the contrary. The same thought is expressed in different language by the Supreme Court of Errors of Connecticut in Saunders v. England C. T. Co., 95 Conn. 40, 110 A. 538. The foregoing discussion, however, more strictly applies to the findings and conclusions of fact where it is asserted that there is no evidence to support them. We have so often held that unless there is an entire absence of competent evidence to support a finding or decision of the commission we are powerless to interfere, that it seems a work of supererogation to even refer to those holdings. We are now confronted with a somewhat different question, however. At least, the question is now presented from a different angle. We are now asked to direct a finding or conclusion of fact contrary to the finding and conclusion of the commission, upon the ground that the commission refused to find according to the evidence which it is asserted is without conflict. To examine a record certified up by the commission for the purpose

of ascertaining whether there is any competent evidence in support of the commission's findings is one thing. To annul a finding, and, particularly, to direct one which is directly contrary to the commission's finding, is, however, quite another thing. In the first case we scrutinize the record for the sole purpose of discovering any evidence in support of the finding; while in the second we must weigh and determine the probative force of the evidence for the purpose of determining whether the commission's findings and conclusions are correct, and, if not, whether a finding contrary to the one made by the commission should have been made. Where a case emanates from an ordinary court of justice which is governed by the ordinary rules of law and procedure, we can at least determine whether or not there is such a gross departure from such rules that the finding of the court should not prevail according to those rules of law and procedure. Where, however, as is the case here, the commission is expressly authorized not only to disregard those rules of law and procedure, but, in the language of the statute, "may make the investigation in such manner as in its judgment is best calculated to ascertain the substantial rights of the parties and to carry out justly the spirit of this title" (the Workmen's Compensation Act [Comp. Laws 1917, § 3149]), then the setting aside the findings of the commission becomes much more difficult than in the first supposed case. In the second case we are required to determine more than whether or not there is any competent evidence in support of the findings or decision of the commission, but, as is pointed out above, we must pass upon the probative force or effect of the evidence. It may be said that to do so in the latter case, like in the former one, merely involves a question of law. No doubt, whether the uncontradicted evidence requires a particular result, where the record emanates from a tribunal which follows the ordinary rules of law and procedure, merely presents a question of law. Such is, however, not the case where the tribunal whose proceedings are under review is authorized to pro-

ceed in disregard of such rules, and where it may follow its own judgment in determining the "substantial rights of the parties." In such case much more latitude must be allowed in determining whether the findings or decision of the tribunal should or should not prevail. While no doubt the commission may not without sufficient cause arbitrarily refuse to follow the uncontradicted evidence, yet, before this court can say that the commission acted arbitrarily or capriciously in the matter, it must be made clearly to appear that such was in fact the case. If any other rule is adopted, the Workmen's Compensation Act must, in part, at least, be nullified. No doubt the Legislature assumed that the commission is better equipped and better qualified to determine the questions of fact than is this court. The most that this court could do would be to say that the commission should have believed and followed some particular evidence, which it refused to do. Whether the commission's findings were right, or whether the conclusions of this court reflected the truth, would still be, and perhaps always would remain, a mooted question. Unless therefore it can be said, upon the whole record, that the commission clearly acted arbitrarily or capriciously in making its findings and decision, this court is powerless to interfere. Such is the manifest purpose and intent of the Workmen's Compensation Act. Where it has been made reasonably clear that the commission had misconstrued or misapplied the provisions of the act, this court has never hesitated to point out the error and to correct the same. It was not intended, however, that this court, in matters of evidence, should to any extent substitute its judgment for the judgment of the commission.

To the mind of the writer, this record does not present a case where it is clear that the commission acted either arbitrarily or capriciously in arriving at its conclusion and in making its decision, and therefore this court is powerless to interfere.

The findings, conclusions, and decision of the commission, therefore, should be and they accordingly are affirmed.

Certiorari

THURMAN and CHERRY, JJ., concur.

GIDEON, C. J. (concurring in part and dissenting in part). I take no issue with arguments and conclusion of Mr. Justice FRICK respecting the rights and powers of the Industrial Commission as a fact-finding body to refuse to be bound by undisputed evidence, unless it appears that the commission acted without reason or arbitrarily in refusing to follow or be bound by such undisputed evidence.

The commission states as a conclusion that the deceased, Gust Calivas, left no dependents. The commission evidently considered the question of dependency to be a conclusion, a conclusion deducible or inferable from other proven facts. Such must necessarily be so. The mere statement that the deceased left no dependents neither advises the parties nor this court why, or upon what grounds, the commission arrived at that result. It is necessary, before concluding that the deceased left no dependents, to determine other and additional facts connected with the claim of dependency. Whether the deceased left dependents can be ascertained only by determining what contributions, if any, deceased had made to others, and whether such contributions were necessary for the support of those claiming to be dependents. Also whether the contributions made, if any were made, were necessary for the support of the claimants. The commission in its decision has a heading designated "Findings." Under that heading it is stated: "A review of the record in this case reveals the following to be the facts." The commission then finds that the deceased was employed by the Utah Fuel Company at the time of his death, and that he was earning sufficient wages to entitle dependents to the maximum weekly compensation; that the fuel company was an employer of labor subject to the Utah Industrial Act; that the employer was a self-insurer. It is also found that the employer had paid the funeral expenses of the deceased. The fifth finding of the commission is as follows:

"That on February 9, 1924, applicant [deceased] applied to the Utah Fuel Company for work, and, over his own signature, stated that his

father and mother were dead. That Mike Calivas, the brother of the deceased, testified under oath that his mother died August 7, 1922, while the father in his deposition states that she died in 1915. That the power of attorney which is supposed to be issued by the father appointing his son Mike to act for him appears in the body of it to be issued to a nephew. That on December 10, 1923, Gust, in a letter to his brother in Greece, inclosed $20 and asked him to give his father $10 of the amount. That the father in his deposition claims to have received $100 about January, 1924. That the son Mike, in a letter addressed to his father, asks that a certain property be put in his name so that he will not have any trouble with the others upon the death of his father. That deceased's letters all indicate that very small amounts were sent to the old country, said amounts ranging from $10 to $30 and in practically all cases sent to brother instead of to the father."

It is fairly inferable, in my judgment, that the commission intended to find that the deceased had contributed small amounts to his relatives in Greece for their support. There is evidence undisputed in the record that the applicant was the father of the deceased, unless it can be said that the statements of the deceased in his application for work is evidence to the contrary. One brother of deceased resides in this state. That brother testified before the commission. He stated the reason these small remittances by his deceased brother were sent to the brother in Greece was that the father cannot read or write, and it was for that reason deemed best to send the remittances to the brother in the old country. This same brother also testified that all of these remittances were sent for the benefit of the applicant, the father of the deceased. Nothing is found in the record disputing this testimony. If the commission intended to find, as in my judgment is the only reasonable inference from the recitals in finding No. 5, that the deceased had contributed to his father's support, then the conclusion or inference that the deceased left no dependents is not supported by the findings. If the commission had made a finding to the effect that the deceased left no dependents and had made no other findings inconsistent with that finding, then the finding of no dependency would have been an ultimate finding

of fact, and under the former holdings of this court would
have supported the order of the commission. On the con-
trary, as appears in this record, the commission has recitals
under a general heading where it is stated that "a review of
the record in this case reveals the following to be the facts."
Under that heading is the fifth finding above quoted. As-
suming, as I do, that the commission intended the recitals
in finding No. 5 to be facts, then I am unable to conclude
that the findings support the conclusion of no dependency.
And that is my objection to the order made by the commis-
sion. The conclusion of the commission that there was no
dependency being in my judgment contrary to the other find-
ings of the commission, I think the order of the commission
should be set aside.

STRAUP, J. I concur in the judgment of Mr. Justice
FRICK, but I wish to say this: This court in a number of
instances has uniformly held that an order of the commis-
sion granting an award would not be disturbed if there is
any substantial competent evidence to support it; and when
on the record there was no substantial competent evidence
to support the award this court without hesitation annulled
it, not because the order was made capriciously, but because
there was no evidence to support it. Now I think the same
principle of law applies to the converse of the proposition;
that is to say, the commission may not any more make an
order refusing an award against undisputed competent evi-
dence demanding an award than to make one granting an
award without evidence to support it. In other words, if
the order in the one instance granting an award is not sup-
ported by any substantial competent evidence, and in the
other refusing an award is against the undisputed compe-
tent evidence demanding it, the order in neither instance
can be upheld. In reviewing the record to ascertain whether
in the one instance the order is supported by any substan-
tial competent evidence, and in the other whether the order
is against the undisputed competent evidence demanding

an award, presents as much a question of law in the one
as in the other instance.

Notwithstanding the provisions of the statute referred
to, making the findings and conclusions of the commission
final and not subject to review and the commission not
bound by the usual common-law or statutory rules of evi-
dence, this court, in a number of instances heretofore, has,
without hesitation and properly, annulled an award if not
supported by any substantial competent evidence. For the
same reason and upon the same principle may this court an-
nul an order refusing and award if against the undisputed
competent evidence demanding an award, notwithstanding
such statutory provision. Certain it is that much discretion
and a wide latitude is possessed by the commission in consid-
ering and weighing evidence, especially testimony. That is
true of every tribunal trying or ascertaining the facts. But
the commission may not any more than legal tribunals re-
ject or disregard competent evidence, or make an award on
wholly incompetent evidence.

The complainant or applicant contends that the undis-
puted competent evidence demands an award, and that the
order refusing it was against such evidence. Such claim is
met by the contention that the evidence as to some of the
material issues is in conflict, or at least so doubtful as not
to require a finding thereon in favor of the applicant hav-
ing the burden of proof; and though the evidence with re-
spect thereto be regarded as undisputed, still its credit,
weight, and worth were for the commission who by its order
as made necessarily discredited or disbelieved it. Notwith-
standing the commission as to this, like a jury, is the sole
judge of the facts, the credibility of witnesses, and the
weight to be given to their testimony, nevertheless, it, like
a jury, is required to take as true undisputed or uncontra-
dicted evidence, if not opposed to probabilities or common
knowledge, or contrary to natural or physical laws, or in-
herently improbable, or inconsistent with circumstances in
evidence, or contradictory in itself, or does not from the

Certiorari

very nature of things come from witnesses directly interested, and it is impossible to secure opposing testimony, or where the witnesses from whom comes the evidence are impeached or otherwise discredited.

The way the matter is here involved is upon the claim that the facts deposed in depositions showing the kinship and dependency are uncontradicted. That the applicant was the father of the deceased employee is not seriously disputed and may well be said to be established by uncontradicted and competent evidence. But that he, under the statute, was a dependent is not so clear. As to that I think it may be said that the matters deposed involve sufficient improbabilities to render, to say the least, the fact of dependency doubtful, and are not of such character where it should be said that such fact was conclusively established, which I must say, to overthrow or annul the order refusing an award.