# LORANGE v. INDUSTRIAL COMMISSION et al.

No. 6715. Decided November 15, 1944. (152 P. 2d 272.)

See 71 C. J., Workmen's Compensation, Sec. 1267; [3] 28 R. C. L. 829.

*Allen G. Thurman,* of Salt Lake City, for plaintiff.

*Grover A. Giles,* Atty. Gen., *Arthur H. Nielsen* and *Zar E. Hayes,* Deputy Attys. Gen., and *E. R. Christensen, Homer Holmgren,* and *A. Pratt Kesler,* all of Salt Lake City, for defendant.

TURNER, Justice.

Certiorari to the Industrial Commission of Utah to review an order denying compensation to plaintiff for the practical

---

[1]*Kavalinakis* v. *Ind. Comm.,* 67 Utah 174, 246 P. 698; *Crane* v. *Ind. Comm.,* 97 Utah 244, 92 P. 2d 722.

loss of sight of his left eye alleged to have been caused by dirt particles falling into it while cleaning underneath a fire truck on April 16, 1942. Plaintiff was fifty-five years of age at the time of the alleged accident and had been in the employ of the Salt Lake City Fire Department since 1916. Two hearings in the matter were held before the Industrial Commission resulting in its order of January 10, 1944, denying compensation. A petition for a rehearing was filed in which it is alleged that the Commission acted arbitrarily and capriciously, contrary to law and in excess of its jurisdiction. The rehearing was denied.

We have carefully examined the record of testimony and documentary evidence introduced. The decision of the Commission fairly and substantially states the case and we quote the following therefrom:

"Applicant testified in substance and effect that while cleaning underneath a fire truck dirt fell into his left eye. He states that he was lying on his back at the time the incident occurred. He further testified that he felt a burning sensation and was required to close his eye, but that he continued on with his work. After work he took cotton and boric acid powder and washed out the eye. All of this occurred on the 17th day of April, 1942. On the 19th day of April, 1942, applicant went to Dr. Openshaw, the city physician, who examined applicant and made a diagnosis of conjunctivitis followed by iritis and glaucoma. Applicant was then sent to Dr. E. B. Fairbanks for treatment. At the time applicant was examined by Dr. Fairbanks he had developed an acute glaucoma which Dr. Fairbanks remedied. It also appears from the testimony of Dr. Fairbanks and other eye specialists that corneal ulcers had developed on the eye as the result of infection, and that eventually infiltration of the cornea, caused by ulcers, destroyed applicant's sight so that at the time of the hearing he had only light perception. Unfortunately, neither applicant nor the doctors who treated him found any foreign particle in the eye. We therefore have no real testimony that anything fell into applicant's eye. It may have been some substance which quickly dissolved, or some substance which escaped the attention of applicant or the doctors.

"According to the testimony of Dr. Fairbanks, an abrasion or scratch on the cornea often becomes infected and causes corneal

ulcers. Failure to find a foreign particle may not be conclusive, but the problem would be much more simple of solution if we knew the substance which entered the eye.

"Furthermore, none of the doctors were willing to express an opinion as to how long the ulcers had existed. We do not know whether the ulcers ante-dated the incident of April 17, 1942, or whether they developed during the five days which elapsed between April 17, 1942, the date of the incident, and April 21, 1942, the day applicant was examined by Dr. Fairbanks.

"There is another situation which makes it extremely difficult to render a decision favorable to applicant. Three versions of the incident have been recorded. Lieutenant Passey, who was in charge of the station where applicant was employed, testified that applicant reported to him on April 17, 1942, as follows: 'I have a very sore eye and dust blew into it as I was coming to work.' This in substance and effect was the report which Lieutenant Passey made to L. M. Hanson, Chief of the Fire Department, on April 19, 1942. Lieutenant Passey further testified that when the applicant appeared on the 17th of April, 1942, he looked at his eye and it appeared to be 'badly inflamed and the white part was blood shot.' He also stated that the eyelid was sore and swollen. Lieutenant Passey also was of the opinion that the condition he observed appeared to have existed for some time.

"Orin Bain, Secretary of the Salt Lake City Fire Department, gave another version. He testified that applicant reported to him that dust had blown into his eye as he was opening the door to the fire station on his way home. That is the report Bain made to Mayor Ab Jenkins on the 2nd day of June, 1942.

"We must therefore determine which of the three versions we are to accept, if any. If the dust particle was blown into his eye on his way to work, or after leaving the premises on his way home from work, naturally applicant would not be entitled to compensation for the reason that the accident, if such it was, did not arise out of, or in the course of employment. On the other hand, if dust particles were blown into his eye as applicant was about to leave the premises, or dirt fell into his eye while he was underneath the fire wagon, then compensation would be in order if the incident described by applicant was an accident.

"We feel that we are compelled to accept the testimony of Lieutenant Passey, and therefore we conclude that if the incident of dust blowing into the eye was an accident, applicant, nevertheless, is not entitled to compensation because the accident did not arise out of or in the course of his employment."

We cannot say from our review of the whole record that the Commission is bound to accept the testimony of plaintiff as to the cause of his eye injury to the exclusion of all the other testimony and record evidence. The testimony in the case is in conflict, it involves discrepancies, ■ and includes medical testimony of three doctors, all of which it would be interesting to review and discuss at length, especially in the light of the time and effort counsel for plaintiff has expended in an attempt to show that the Commission misinterpreted the testimony pertaining to Lieutenant Passey's written report of the incident made contemporaneously with its happening, but the fact remains that in the ultimate the evidence does not require a contrary finding. We are also unable to say that the Commission's decision is the result of capricious or arbitrary action, which we would be required to determine before setting its order aside. It was said by Mr. Justice Frick in *Kavalinakis* v. *Ind. Comm.*, 67 Utah 174, 246 P. 698:

"Unless therefore it can be said, upon the whole record, that the commission clearly acted arbitrarily or capriciously in making its findings and decision, this court is powerless to interfere. Such is the manifest purpose and intent of the Workmen's Compensation Act, where it has been made reasonably clear that the commission had misconstrued or misapplied the provisions of the act, this court has never hesitated to point out the error and to correct the same. It was not intended, however, that this court, in matters of evidence, should to any extent substitute its judgment for the judgment of the commission." See, also, *Crane* v. *Ind. Comm.*, 97 Utah 244, 92 P. 2d 722, and cases therein cited.

The order of the Commission denying compensation is affirmed.

WOLFE, C. J., and LARSON, McDONOUGH, and WADE, JJ., concur.