431 P.2d 794

Eola Margaret GARNER, widow, and James Douglas Garner and Pamela Garner, minor children of Douglas Garner, Deceased, Plaintiffs,

v.

HECLA MINING COMPANY and the Industrial Commission of Utah, Defendants.

No. 10667.

Supreme Court of Utah.

Aug. 24, 1967.

---

368

Rawlings, Wallace, Roberts & Black, Richard C. Dibblee, Salt Lake City, Chas. Traylor, Grand Junction, Colo., for plaintiffs.

Phil L. Hansen, Atty. Gen., F. Robert Bayle, Salt Lake City, for defendants.

CROCKETT, Chief Justice:

Plaintiffs, the widow and children of Douglas Garner, attack the findings and order of the Industrial Commission denying benefits for his death which they contend resulted from an occupational disease caused

from working as a uranium miner for the defendant Hecla Mining Company.

Mr. Garner had worked in and around uranium mines since 1940, 15 years of it underground. The last eight years had been in Utah, four years of that for the defendant Hecla Mining Company. He became ill and was hospitalized on July 14, 1963. Tests were taken which revealed extensive carcinomatosis (a form of cancer), involving the lungs, bronchus, preaortic nodes, liver, spleen, and adrenal glands. After his death, September 15, 1963, the autopsy report showed that he had severe aortic atherosclerosis and coronary atherosclerosis.

Our occupational disease statutes were enacted as an adjunct to the compensation previously provided for accidental injuries to further implement one of the main policy considerations which underlies workmen's compensation: that industry should bear the burdens of the human casualty it causes.[1] Due largely to the difficulty in ascertaining causal relationships it has proceeded into that field with caution, limiting coverage to certain named diseases and adding: such other diseases or injuries to health which "directly arise as a natural incident of the exposure occasioned by the employment" and only where it is shown there is a "direct and proximate causal connection between the conditions of the work and the occupational disease," and which does not result from a hazard to which the workman would have been equally exposed outside of the employment.[2]

Plaintiffs urge the persuasiveness of statistical data, scientific evidence and medical opinion that there is a much higher than average incidence of lung cancer in uranium miners. The hazardous agent is radon gas. When a man breathes it, it changes in several chemical steps to the end product, known as lead-210. This accumulates in the kidneys, liver, spleen and especially the bones. By autopsy it can be determined to some degree the exposure a person had to the radon gas. Correlating with this, it was shown that Mr. Garner had 34 times as much lead-210 in his bones as the average for a nonminer; and that the Hecla Mine had about $2\frac{1}{2}$ times as much of the radon gas as the "recommended working level" approved by the Federal Government and some states which have regulations on the subject.

The foregoing evidence came from competent sources, including Dr. Victor E. Archer, an apparently well qualified expert who had had large experience and had done investigation and research in this field. He was not the attending physician but upon

---

1. U.C.A.1953, 35–2–26, 27, first enacted in 1941 as Ch. 41, Secs. 27, 28.
2. U.C.A.1953, 35–2–27 (28). This subsection sets out the requirements for other diseases to be included with the diseases enumerated in 35–2–27. They duplicate the requisites for proximate causation of occupational diseases in 35–2–26.

the basis of the foregoing information was of the opinion that there was a very high possibility that the death of Mr. Garner resulted from lung cancer caused by the radon gas present in uranium mines. This is the foundation of plaintiffs' argument that the Commission was capricious and arbitrary in its refusal to find that the cause of Mr. Garner's death was an occupational disease as defined in our statutes referred to above.

■ We have no doubt about the propriety of receiving and considering the evidence above referred to, and of scientific data and expert opinions based thereon concerning the high incidence of lung cancer in uranium miners, because they are relevant to the critical problem here. This evidence is indeed somewhat impressive and may well be regarded as calling attention to the question whether lung cancer of uranium miners should be included in the occupational diseases specified by statute as compensable.

■ Under our statutes and long established decisional law there are insuperable obstacles to the granting of the relief sought by plaintiffs on this appeal: it was their burden to show affirmatively and to so persuade the Commission that Mr. Garner's death resulted from a disease caused by his occupation. It is the prerogative of the Commission, and not of any individual witness, or even of the medical panel, to judge the credibility of the evidence, and upon the basis of the whole evidence to determine the facts. The plaintiffs having failed to so persuade the Commission, it is the duty of this court to survey the evidence in the light most favorable to the findings and order; and we cannot reverse and compel an award unless there is credible evidence without substantial contradiction which points so clearly and persuasively in plaintiffs' favor that failure to so find must be regarded as capricious and arbitrary. Conversely, if there is any reasonable basis in the evidence, or from the lack of evidence, which will justify the refusal to so find, we must affirm.[3]

While it seems logical that the unusually high incidence of lung cancer in uranium miners would indicate in the same ratio the higher probability than otherwise that such was the cause of the disease, it nevertheless falls short of compelling a finding that such was the cause in any individual case. For illustration, in a more commonly known field: the fact that the incidence of lung cancer in heavy cigarette smokers is 30% to 50% higher than in nonsmokers does not necessarily compel the conclusion that any individual smoker's case of lung cancer re-

3. See Kent v. Industrial Commission, 89 Utah 381, 57 P.2d 724; Kavalinakis v. Industrial Commission, 67 Utah 174, 246 P. 698; and for a recent case quite analogous see Vause v. Industrial Commission, 17 Utah 2d 217, 407 P.2d 1006.

sulted from cigarette smoking. The disease also arises quite independently of and therefore apparently from other causes than cigarette smoking. Incidentally on the subject of cigarettes, it was shown that Mr. Garner himself had smoked a package a day for about 20 years.

The fallacy which underlies plaintiffs' attack on the Commission's finding is that they improperly attempt to focus consideration of the issues exclusively upon their own view of the evidence and theories of the case. While some aspects of the statistical data and medical theories harmonize with their contention, others fail to do so. For instance, Dr. Saccomanno, the pathologist called by them, acknowledged the well known but unfortunate uncertainty as to the cause of cancer. He readily admitted that, in any given individual, "there are a great many unknown factors as to what might cause cancer" and that " * * * it could be concluded that the radon gas alone didn't cause the problem incident to the death, but it's merely based on a statistical study of a given number of cases."

Consistent with the foregoing and corroborating the existence of unknown factors and uncertainty as to causation, is the report of the medical panel to which this case was referred for examination: "We cannot confirm that the lung carcinoma was caused by exposure to uranium mining oc-

cupation." There is thus a reasonable basis in the evidence for the refusal of the Commission to find in accordance with the plaintiffs' contention. Upon the principles stated above it is our duty to affirm the decision.[4] No costs awarded.

CALLISTER, HENRIOD and ELLETT, JJ., concur.

TUCKETT, Justice (dissenting):

I dissent. It appears from the record that the Commission based its findings in this matter upon the findings of the medical panel. The Commission in its order stated as follows:

The Commission concurs that "Mr. Garner's death was not caused by exposure to uranium or its byproducts." Further, that the lung carcinoma of Mr. Garner was not caused by the exposure occasioned by his working in the occupation of a uranium miner.

The medical panel to which this matter was referred by the Commission received evidence and medical data from various sources and thereafter concluded that the evidence was insufficient to establish that the cancer from which Mr. Garner died resulted from his exposure to radon gas or other byproducts of uranium ore. There was some evidence before the panel from which it might have concluded that the de-

4. Ibid.; and see also Edlund v. Industrial Commission et al., 122 Utah 238, 248 P.2d 365.

**372**

cedent's cancerous condition resulted from his overexposure to radiation while working in the mines. After objections were filed by the plaintiffs to the report of the medical panel, further proceedings were had before the Commission at which time Dr. Elmer L. Kilpatrick, chairman of the panel, was examined by counsel for the respective parties. In response to questions by counsel for the plaintiffs, Dr. Kilpatrick testified in part as follows:

Q. (By counsel) I think we have discussed this once. Assuming that it was there, with the exposure to hazards which you have enumerated here, then would you say—assuming that the cancer was there—would you say that probably this exposure lighted it up, or caused it to go ahead and cause his death in a shorter time than it would have if he hadn't worked in the mines?

A. No, I wouldn't use the word "probable". I would use the word "possible". And we consider the term "beyond a reasonable doubt" is a pretty good phrase to use.

Q. You mean in Utah, in order to recover, you doctors have to say that it is beyond a reasonable doubt? Is this your understanding?

A. Yes.

Q. I see. And you are not willing to say that beyond a reasonable doubt Mr. Garner died of lung cancer as a result of overexposure to radiation; is this correct?

A. Yes.

Q. And the panel applied that rule in this case; is that right?

A. Among all the other considerations, of course.

It would appear from the foregoing that the medical panel assumed that the plaintiffs had the burden of proving beyond a reasonable doubt the causal connection between the decedent's exposure to radon gas while working in the mines and his cancerous condition from which he died. The Commission by adopting the report of the medical panel and its findings in respect to the claims of the plaintiffs adopted the same standard of proof. Neither the statutes nor the decisions of this court require that a claimant has the burden of proving his claim beyond a reasonable doubt.

I am of the opinion that it was prejudicial error on the part of the Commission to require that the claims of the plaintiffs be established beyond a reasonable doubt. I am in favor of returning the case to the Commission for further proceedings.