**L. Dale CHADWICK, Plaintiff,**

**v.**

**INDUSTRIAL COMMISSION of Utah, Intermountain Health Care, Inc., and McKay-Dee Hospital (Self-Insured), Defendants.**

**No. 15070.**

Supreme Court of Utah.

Dec. 5, 1977.

Findley P. Gridley and Philip C. Patterson, Ogden, for plaintiff.

Robert B. Hansen, Atty. Gen., Joseph C. Rust, Salt Lake City, for defendant.

---

6. *Ibid.*, and *State v. Risk*, Utah, 520 P.2d 215 (1974).

CROCKETT, Justice:

The plaintiff L. Dale Chadwick seeks review of an order of the defendant Industrial Commission denying him compensation under the "Utah Occupational Disease Disability Law"[1] for an eye infection which he asserts was contracted within the course of his employment as a nurse with the defendant McKay-Dee Hospital.

On November 11, 1975, while working in the emergency room of the hospital, the plaintiff treated one Ronald Fielding who complained of an eye irritation. After deadening and washing the eye, the plaintiff reported the problem to a Dr. McEntire who removed two metal splinters from Mr. Fielding's eye and gave him some medication to prevent any infection. Mr. Fielding was released and suffered no further complications.

About three days later, the plaintiff's left eye became red and irritated. He contacted one of the doctors in the emergency room who treated it with the same medication which had been given to Mr. Fielding. One week later, when the condition of the plaintiff's eye had not improved, he was again examined and referred to an ophthalmologist. During the next month, the plaintiff was treated for both a fungal and bacterial infection, but his eye continued to deteriorate. On January 14, 1976, he underwent surgery to repair the cornea of his left eye. Although he was released on February 2, 1976, to resume normal activities, he is now partially blind in that eye.

The administrative law judge referred the medical aspects of the case to a medical panel.[2]

The panel report included these recitals:

The applicant had a visual acuity of 20/40 in the left eye as a result of a corneal injury in 1972. This would result in a 15% reduction in visual efficiency in that eye prior to his last infection.

\*　　\*　　\*　　\*　　\*　　\*

Beneath this membrane is evidence of a well-developed scar which is slightly below the center of the pupil. *This is a residual of the long standing infection of the cornea.* Vision is reduced to light perception. This can be classified as an industrially blind eye.

It further stated that "the hospital environment provides a much greater exposure to all types of infections;" that the plaintiff "would be exceedingly more vulnerable to infection in the hospital environment" and "the fact that the hospital environment provides a much greater exposure to all types of infections would suggest that the applicant's eye problems *could be* traced to his employment." However, the panel report also stated that the infection would probably have been transmitted to the plaintiff from some other person, but that it was not shown that there was any causal connection between the plaintiff's eye infection and that of Mr. Fielding, upon which plaintiff based his contention.

On the basis of the evidence and of that report, the findings of the administrative law judge stated that he could not determine with:

. . . *reasonable certainty* that the problems of the applicant were caused by either his contact with Mr. Fielding or in connection with any other contact he may have had as a result of his employment.

Those findings, which were adopted by the Commission, concluded that there was not sufficient evidence to show a causal connection between plaintiff's employment and his infection, and denied his claim for compensation.

Plaintiff argues that his evidence and the medical report are sufficient to establish his right to compensation and that the Commission improperly imposed a higher degree of proof upon him than that represented by the "preponderance of the evidence" test, which we agree is applicable in such administrative proceedings.[3]

---

1.　U.C.A.1953, 35–2–1 to 35–2–65.

2.　As provided by U.C.A.1953, 35–2–57.

3.　82 Am.Jur.2d, Workmen's Compensation, Sections 511, 534; *Grasteit v. Industrial Commission,* 76 Utah 487, 290 P. 764 (1930).

■ The right to an award for occupational disease is created by statute and is dependent upon meeting the requisites of the Occupational Disease Act. U.C.A.1953, Section 35–2–27(1) through (27) enumerates certain named diseases and conditions which are deemed to be occupational; and subsection (28) contains a general provision as a "catch-all" for other diseases or injuries which may be found to be occupational diseases if certain conditions are met. It provides in pertinent part:

> . . . Such *other diseases or injuries* . . . which directly arise as a natural incident of the exposure occasioned by the employment . . . shall be compensable only in those circumstances where it is shown by the employee . . . that all of the following named circumstances were present: (1) a *direct causal connection* between the conditions under which the work is performed and the disease or injury to health; . . . (3) the disease or injury to health *can be fairly traced to the employment as to the proximate cause* . . .
>
> [All emphasis herein is added.]

■ The burden of proof was upon the plaintiff to establish the above propositions. We have no doubt about the correctness of his assertion that this could be done on the basis of circumstantial evidence.[4] However, having failed to so persuade the Commission, this court is obliged to survey the evidence in the light most favorable to the Commission's findings and order.[5]

■ Plaintiff's argument that the medical panel report to the effect that there was a comparatively high risk of infection in his employment and that there therefore existed the possibility that his eye infection could have come from that source is not entirely without plausibility. However, the mere fact that it *could* have come from that source or even that there is some likelihood that it did so, does not compel a finding that that was the fact. It is both the prerogative and the responsibility of the Commission to examine the evidence and to draw whatever inferences therefrom it thinks fair and reasonable in determining the facts. In order for this court to overturn the Commission's refusal to grant plaintiff an award on the evidence herein, we would have to depart from the field of proper review and enter that of probability or conjecture, something which the Commission itself was unwilling to do.[6]

The plaintiff has failed to show that the decision of the Commission was for any reason capricious, arbitrary or unreasonable. It is hereby affirmed. No costs awarded.

ELLETT, C. J., and MAUGHAN, WILKINS and HALL, JJ., concur.

---

4. 82 Am.Jur.2d, Workmen's Compensation, Section 533; *Newman v. Bennett,* 212 Kan. 562, 512 P.2d 497 (1973).

5. *Garner v. Hecla Mining Co.,* 19 Utah 2d 367, 431 P.2d 794 (1967); *Duaine Brown Chev. Co. v. Industrial Commission,* Utah, 29 Utah 2d 478, 511 P.2d 743 (1973).

6. That the "preponderance of the evidence" test requires a showing of greater probability that the truth lies therein, see *Lindsay v. Gibbons and Reed,* 27 Utah 2d 419, 497 P.2d 28 (1972); McCormick on Evidence, Sec. 319.