UNITED STATES STEEL CORPORA-
TION, Plaintiff,

v.

Donna G. DRAPER, widow of Paul C.
Draper, deceased, Defendants.

No. 16568.

Supreme Court of Utah.

June 3, 1980.

James B. Lee and Erie V. Boorman, Jr.,
of Parson, Behle & Latimer, Salt Lake City,
for plaintiff.

Robert B. Hansen, Atty. Gen., Frank V.
Nelson, Asst. Atty. Gen., Salt Lake City, for
Comm.

A. Wally Sandack, Salt Lake City, for
Draper.

CROCKETT, Chief Justice:

Plaintiff United States Steel seeks rever-
sal of an order of the Industrial Commission
which awarded death benefits to the de-
pendents of Paul C. Draper, based on the
finding that his fatal heart attack was an
accident which occurred in the course of his
employment at the plaintiff's Geneva Steel
Plant.[1]

Mr. Draper was a "hot car" operator.
The car is driven into position to receive
molten coke from an oven, then transported
to a quenching station. There, water is
sprayed on to cool it. Then the car conveys
the coke and dumps it, and repeats that
process. At about 1:30 a.m. on November
29, 1977, as Draper drove his "hot car" into
a quencher, his attention was drawn to
some commotion about 100 yard away at a
settling pond. He backed his car out of the
quencher, dumped his load, and pulled his
car up to the next oven to be loaded. He
said to his fellow employee Robert Godfrey:

---

1. We assume that the Commission believed
those aspects of the evidence which support its
findings, see *Jensen v. U. S. Fuel Co.*, 18 Utah
2d 414, 424 P.2d 440 (1967).

Something is going on back here . . . Bart is running around like crazy. * * After we push this load, I'm going to see what is going on—if there is anything I can do.

Draper drove his car to the quenching station and set the water for the cooling process. He then climbed down a ten-foot ladder, jumped two and one-half feet to the ground, and ran toward the settling pond. He learned that another fellow employee, Nancy Hammersley, who had been operating a front end loader, had accidentally tipped it into the settling pond and drowned. Terry Gilson, who had arrived there before Draper, testified that he saw Draper running hard to get to the pond. The latter was wearing heavy fire resistant pants. After remaining there for a few minutes, and seeing that the ambulance crew were engaged in the attempted rescue, Draper said that he could be of no help and that "I had better be getting back to work" and left. Shortly thereafter, he was found lying on the ground gasping for air. The ambulance rushed him to the hospital, but he died enroute.

Mr. Draper was a man 53 years of age. The defendant's evidence was that he appeared to be in good health and had never had any heart trouble nor any medical attention for heart problems. However, from the autopsy, the medical panel reported that he had substantial heart disease which was estimated to be 60 percent responsible for the occurrence, but the report also included that his exertions in response to the emergency were a "significant material factor contributing to his heart attack and death."

■ The fact that the deceased had a pre-existing diseased condition of his heart does not preclude a finding that his death resulted from an accident in the course of his employment. This Court has long ago and repeatedly recognized that, despite any pre-existing condition of disease or disability, if there is an incident, properly regarded as an accident [2] in the course of work which adds to or aggravates that condition, any resulting injury is compensable.[3]

Plaintiff makes the argument that when Mr. Draper left his car to investigate the incident in a different work area, he had gone outside the scope of his assigned duties and engaged in activities which were neither authorized nor incidental thereto; and that therefore, his injury could not reasonably be found to be an "accident arising out of or in the course of his employment . . ." [4]

■ It is neither fair nor realistic to expect that an employee will always keep strictly within the narrow bounds of one assigned task. It is of such common knowledge that it must be accepted as a fact that people tend to be friendly with those around them and concerned about their welfare. The scope of one's employment includes not only the specific duties assigned, but also those things which it should reasonably be expected an employee would do in connection with those duties, particularly so when someone appears to be in danger or distress.[5]

In that connection, it is noted that the rules of the company impose the duty on employees to be concerned with the safety of their fellow employees. The rules provide:

> The General Safety and Plant Conduct Rules and Regulations apply to all . . . employees. Your cooperation in preventing accidents is an absolute necessity. Safety is . . . *the responsibility of every employee every minute of the day and night* . . . .

2. See *Carling v. Ind. Comm.*, 16 Utah 2d 260, 399 P.2d 202 (1965), which defines an accident as an occurrence different from what would normally be expected in the usual course of events.

3. See *Graybar Electric Co. v. Ind. Comm.*, 73 Utah 568, 276 P. 161 (1929); *Robertson v. Ind. Comm.*, 109 Utah 25, 163 P.2d 331 (1945); *Powers v. Ind. Comm.*, 19 Utah 2d 140, 427 P.2d 740 (1967); *IGA Food Fair v. Martin*, Utah, 584 P.2d 828 (1978).

4. As required by Sec. 35–1–45, U.C.A., 1953.

5. See *Bailey v. Utah State Ind. Comm.*, 16 Utah 2d 208, 398 P.2d 545 (1965); *Hafer's, Inc., etc. v. Ind. Comm.*, Utah, 526 P.2d 1188 (1974) and cases therein cited.

You are expected to use proper care . . . for your own safety and *that of employees working with you or near you.* . . . Safety can be accomplished only through *complete cooperation of all employees* . . . . [Emphasis added.]

When the circumstances are such that reasonable minds might differ as to whether the actions of an employee should be regarded as arising out of or occurring in the course of his employment, the question becomes one of fact for the Commission to determine. We see no reason to disagree with its view that it was but a natural and reasonably to be expected reaction of the deceased to run to investigate and see if he could be of some help when it appeared that a fellow employee might be in danger or distress, and that therefore, his death resulted from an extraordinary exertion which constituted an accident arising out of his employment.

Affirmed. No costs awarded.

MAUGHAN, WILKINS, HALL and STEWART, JJ., concur.