**KAISER STEEL CORPORATION,
Plaintiff,**

v.

**Lawrence F. MONFREDI and The
Industrial Commission of Utah,
Defendants.**

No. 17152.

Supreme Court of Utah.

June 1, 1981.

Steven E. Clyde, Salt Lake City, for plaintiff.

David L. Wilkinson, Salt Lake City, Marlynn B. Lema, Price, for defendants.

OAKS, Justice:

This is a writ of review to set aside an order of the Industrial Commission in a claim for workmen's compensation. The order directed the employer to pay $2,532.94 plus medical expenses to an employee who was totally disabled for three months with a back injury. The employer seeks reversal of that order.

The administrative law judge, whose findings and conclusions were affirmed by the Industrial Commission, found (1) that "there was a definite identifiable injury to the Applicant's low back on January 5, 1979"; (2) that "the Applicant was temporarily totally disabled" from that date until April 4, 1979; and (3) that "Applicant is entitled to workmen's compensation benefits as a result of his industrial accident of January 5, 1979 . . . ."[1] The employer ar-

---

1. The administrative law judge also found that applicant had a 15 percent permanent physical impairment "based on moderate rigidity of the

gues that the applicant's disability resulted from a preexisting physical condition rather than an identifiable "accident . . . in the course of his employment" as required by U.C.A., 1953, § 35–1–45.[2] The issue on appeal—whether the applicant was injured by an "accident"—is a question of fact which turns on the findings of the Commission and the evidence before it.

The governing statutes (1) require the Commission to make written findings of fact, and (2) provide that the "findings and conclusions of the commission on questions of fact shall be conclusive and final and shall not be subject to review," § 35–1–85, except where "the findings of fact do not support the award." § 35–1–84(2). The meaning of that exception was defined in the leading case of *Kavalinakis v. Indus. Comm'n*, 67 Utah 174, 181–82, 184, 246 P. 698, 700, 701 (1926), as follows:

> What we hold is that in case . . . we are asked to overturn the findings and conclusions of the commission which appear to be in conflict with or contrary to the evidence, it must be clearly made to appear to us that the commission acted arbitrarily or capriciously and wholly without cause in rejecting or in refusing to give effect to the evidence. . . . Any other conclusion would make this court merely a reviewing court with power to weigh the probative effect of the evidence. . . .

Unless therefore it can be said, upon the whole record, that the commission clearly acted arbitrarily or capriciously in making its findings and decision, this court is powerless to interfere. Such is the manifest purpose and intent of the Workmen's Compensation Act. . . . It was not intended, . . . that this Court, in matters of evidence, should to any extent substitute its judgment for the judgment of the commission.

The *Kavalinakis* declaration that the Commission will be sustained in its findings of fact unless its action was "arbitrary or capricious" has been cited repeatedly as the appropriate standard by which this Court reviews the Commission's findings of fact.[3]

In many subsequent cases, this Court has also reaffirmed that the reviewing court does not weigh the probative effect of conflicting evidence before the Commission.[4] Similarly, the reviewing court will survey the evidence in the light most favorable to the Commission's findings and order.[5] Subsequent courts have also reaffirmed the *Kavalinakis* statement that under the Workmen's Compensation Act this Court should not "to any extent substitute the judgment of the court upon factual matters for the judgment of the commission."[6] Thus, for example, this Court has repeatedly held that it cannot substitute its judgment for the Commission's on which of two possible

---

lumbar spine accompanied by associated progressive degenerative disease of the lumbar spine" due to accidental injury, disease or congenital causes existing prior to the January 5, 1979, injury.

2. "Every employee . . . who is injured . . . by accident arising out of or in the course of his employment . . . shall be entitled to [compensation and medical expenses]." U.C.A., 1953, § 35–1–45.

3. E. g., *McPhie v. Indus. Comm'n*, Utah, 567 P.2d 153 (1977); *McWilliams v. Indus. Comm'n*, 21 Utah 2d 266, 444 P.2d 513 (1968); *Garner v. Hecla Mining Company*, 19 Utah 2d 367, 431 P.2d 794 (1967); *Baker v. Indus. Comm'n*, 17 Utah 2d 141, 405 P.2d 613 (1965); *Western Contracting Corp. v. Indus. Comm'n*, 15 Utah 2d 208, 390 P.2d 125 (1964); *Dalton v. Indus. Comm'n*, 8 Utah 2d 353, 334 P.2d 763 (1959); *Lorange v. Indus. Comm'n*, 107 Utah

261, 153 P.2d 272 (1944); *Kelly v. Indus. Comm'n*, 80 Utah 73, 12 P.2d 1112 (1932).

4. E. g., *Wiseman v. Village Partners*, Utah, 589 P.2d 754 (1978); *Clinger v. Indus. Comm'n*, Utah, 571 P.2d 1328 (1977); *Russell v. Indus. Comm'n*, 86 Utah 306, 43 P.2d 1069 (1935); *Ogden Union Ry. v. Indus. Comm'n*, 85 Utah 124, 38 P.2d 766 (1934); *Parker v. Indus. Comm'n*, 78 Utah 509, 5 P.2d 573 (1931).

5. E. g., *Chadwick v. Indus. Comm'n*, Utah, 572 P.2d 400, 402 (1977); *Savage v. Indus. Comm'n*, Utah, 565 P.2d 782, 783 (1977); *Shipley v. C. & W Contracting Co.*, Utah, 528 P.2d 153, 155 (1974), and cases cited therein.

6. E. g., *Kent v. Indus. Comm'n*, 89 Utah 381, 386, 57 P.2d 724 (1936).

inferences should be drawn from the evidence.[7]

There are at least two other much-cited descriptions of this Court's scope of review of Commission findings of fact. In *Kent v. Indus. Comm'n*, 89 Utah 381, 385, 57 P.2d 724, 725 (1936), a unanimous Court declared:

> In case of an award of compensation, all the record is required to disclose is that there is sufficient, competent, material evidence in the record to support the award. That there is a conflict in the evidence, or that this court might or would have found differently had the evidence been submitted to it as a trier of the facts, is of no consequence. The Industrial Commission is a fact-finding body, and in case there is any substantial evidence to support its findings, its findings are conclusive upon this court and may not be disturbed.

In *Norris v. Indus. Comm'n*, 90 Utah 256, 260–61, 61 P.2d 413, 415 (1936), the Court defined its function as follows:

> Where the matter presented on appeal is the question of whether the commission should have in law arrived at a conclusion of fact different from that at which it did arrive from the evidence, a question of law is presented only when it is claimed that the commission could only arrive at one conclusion from the evidence, and that it found contrary to that inevitable conclusion.

Writing for the Court, Justice Wolfe outlined six criteria which had to combine in order to justify reversing the Commission, such as uncontradicted evidence in opposition to its position, and then continued:

> If the commission should decide against the uncontradicted evidence under those conditions, its decision would as a matter of law be arbitrary and capricious, which is another way of saying that it would be unreasonable.

■ Under any of these standards—*Kavalinakis, Kent,* or *Norris*—it is apparent that this Court's function in reviewing Commission findings of fact is a strictly limited one in which the question is not whether the Court agrees with the Commission's findings or whether they are supported by the preponderance of evidence. Instead, the reviewing court's inquiry is whether the Commission's findings are "arbitrary or capricious," or "wholly without cause" or contrary to the "one [inevitable] conclusion from the evidence" or without "any substantial evidence" to support them. Only then should the Commission's findings be displaced.

■ Applying those standards, we turn to the record to see whether there is the requisite support for the Commission's finding that the applicant sustained a "definite identifiable injury" (or "accident"—the terms are used interchangeably in the findings—) on the job on January 5, 1979. This requires a preliminary inquiry into the meaning of the word *accident* in § 35–1–45. The meaning of this word is a question of law; whether the evidence conforms to that meaning is a question of fact.

The leading case on the meaning of "accident" is *Carling v. Industrial Commission*, 16 Utah 2d 260, 261–62, 399 P.2d 202, 203 (1965), a unanimous opinion in which this Court declared:

> [T]his court has held that for the purpose of the Act [the term "accident"] should be given a broad meaning. It connotes an unanticipated, unintended occurrence different from what would normally be expected to occur in the usual course of events. We recognize the correctness of plaintiff's contention that even though there must be some such "accident" within the meaning of that statute, this is not necessarily restricted to some single incident which happened suddenly at one particular time and does not preclude the possibility that due to exertion, stress or other repetitive cause, a climax might be reached in such manner as to properly

---

7. *Pace v. Indus. Comm'n*, 87 Utah 6, 47 P.2d 1050 (1935); *Park Utah Consol. Mines Co. v. Indus. Comm'n*, 84 Utah 481, 36 P.2d 979 (1934); *Parker v. Indus. Comm'n*, 78 Utah 509, 5 P.2d 573 (1931); and cases cited therein.

fall within the definition of an accident as just stated above. However, such an occurrence must be distinguished from gradually developing conditions which are classified as occupational diseases and which are not compensable except as provided in [§ 35–2–1, et seq.].

This Court has held that the aggravation of a preexisting disability of the back by the performance of an employee's usual and customary work is not compensable as an "accident" where there was no "intervention of any unusual event or trauma."[8] On the other hand, this Court has also applied the *Carling* definition by declaring that even though a back injury is related to a preexisting deficiency or disease, "if there is an incident, properly regarded as an accident in the course of work which adds to or aggravates that condition, any resulting injury is compensable."[9]

As suggested by the contrast between those two cases, the application of the "accident" requirement to back injuries has been particularly vexing to this Court and to the Commission. In fact, this is at least the ninth back injury case that has come to this Court from the Commission in less than 30 months,[10] and in most of these cases the Court has been sharply divided, often on whether or not the disability was the result of an "accident" or merely the consequence of a preexisting condition.

The facts of one of these back cases, *U.S. Steel Corp. v. Indus. Comm'n*, Utah, 607 P.2d 807 (1980), are remarkably similar to the facts in the case now before the Court. In *U.S. Steel*, the employee "felt a pop in his back" as he was reaching under a conveyor belt in the course of shoveling ore from under the belt. His injury was diagnosed as a herniated disk. The Commission found that the employee's temporary dis-

ability had resulted from an industrial accident, and this Court unanimously affirmed an award for temporary total disability.

■ The record evidence in this case showed that at the start of his shift in the mine on January 5, 1979, the applicant, Monfredi, was scaling rock from the roof of the mine and shoveling it onto a conveyor belt. In the hearing before the Commission, he was questioned about whether there was any particular or unusual incident or act that he could specify as causing his injury, such as breaking a shovel or slipping on a rock. He gave this answer:

No. I was just shoveling onto the belt. Shoveling that rock. I was scaling down the rock by the beltline, and I was shoveling it onto the belt. Cleaning it up. . . . Well, I was right by the belt. You know. I got my shovel, and was scaling down some rock. Then, when I went to shovel like this, there was a catch in my back. Right here in the lower back. (Indicating) . . .

It went about halfway. If it had went out entirely, they would have had to carry me out. But it was just half out.

The company doctor who examined the applicant reported "Lumbar Syndrome . . . general spinal arthritis and possible discogenic disease," predicting a one-week return to work. When the lower back pain prevented the applicant's return in that period, he was examined by a specialist and hospitalized for about a week. A myelogram was performed "with findings of shallow but consistent extradural defect at the L4–5 interspace level consistent with disk protrusion without other demonstrated abnormality." The final discharge diagnosis was "herniated lumbar disk."

8. *Farmers Grain Co-op v. Mason*, Utah, 606 P.2d 237, 239 (1980).

9. *United States Steel Corp. v. Draper*, Utah, 613 P.2d 508, 509 (1980). Accord, *Nuzum v. Roosendahl Const. & Min. Corp.*, Utah, 565 P.2d 1144, 1146 (1977).

10. *Entwhistle v. Indus. Comm'n*, Utah, 626 P.2d 495 (1981); *Painter Motor Co. v. Ostler*, Utah, 617 P.2d 975 (1980); *Schmidt v. Indus. Comm'n*, Utah, 617 P.2d 693 (1980); *U.S. Steel v. Indus. Comm'n*, Utah, 607 P.2d 807 (1980); *Farmer's Grain Co-op v. Mason*, Utah, 606 P.2d 237 (1980); *Church of Jesus Christ of Latter-Day Saints v. Indus. Comm'n*, Utah, 590 P.2d 328 (1979); *Wiseman v. Village Partners*, Utah, 589 P.2d 754 (1978); *Buxton v. Indus. Comm'n*, Utah, 587 P.2d 121 (1978).

The applicant had worked as a miner for this employer for about 27 years. Until 1978, he had been a roof bolter. He had a history of back problems associated with his work. In 1965, he was examined by the company doctor for pain in the lumber region after lifting a duke. In 1968, he was examined twice, once after feeling a pinch in his lower back as he was lifting a big rock from under the conveyor belt, and once for lower back pain after he grabbed for a rock on the conveyor belt. Company medical reports also showed that in 1969 he twisted his back as he was shoveling rock along the face of the coal seam, in 1970 he sustained a strain to his lower back as he was pulling a grease bucket from under a conveyor belt, and in 1971 he felt a pinch in his lower back while he was lifting a sack of rock dust. Again that same year, he injured his back (which "went out" as he described it) while lifting steel beams. According to the applicant's statement, all of these injuries were covered by workmen's compensation.

The applicant's history of work-related accidents and his medical condition showed a job-induced preexisting condition which could have been added to or aggravated, *United States Steel Corp. v. Draper*, Utah, 613 P.2d 508, 509 (1980), by the work-related incident that occurred on January 5, 1979, or which could have reached what this Court has referred to as a "climax" due to "exertion, stress, or other repetitive cause ... in such manner as to properly fall within the definition of an accident ...," *Carling v. Indus. Comm'n,* quoted *supra.* In the almost identical circumstance in *U.S. Steel Corp. v. Indus. Comm'n, supra,*—a pop in the back suffered while reaching to shovel under a conveyor belt—this Court unanimously affirmed an award for temporary total disability.

Mindful of the "recognized rule of construction [that] resolves any doubt respecting the right of compensation in favor of the injured employee or his dependents," and the principle that "the compensation statutes should be liberally construed in favor of recovery," *McPhie v. Indus. Comm'n,* Utah, 567 P.2d 153, 155 (1977), we cannot conclude that the Commission's finding that applicant's injury and disability resulted from an "accident" was "arbitrary or capricious" or "wholly without cause" or without "any substantial evidence" to support it. The Commission's order is therefore affirmed.

MAUGHAN, C. J., and HALL, STEWART and HOWE, JJ., concur.